## UNITED STATES v. WILSON et al.

(Circuit Court, S. D. New York. June 8, 1908.)

1. SEARCHES AND SEIZURES—PAPERS TAKEN FROM DEFENDANT'S POSSESSION—APPLICATION FOR RETURN.

The right of a defendant in a criminal case to a return of property held by the district attorney and alleged to have been obtained as the result of an unconstitutional search and seizure, and which includes papers intended to be used as evidence on the trial in alleged violation of defendant's rights under the fifth constitutional amendment, may be determined by the court on his motion in advance of the trial.

2. CRIMINAL LAW—EVIDENCE WRONGFULLY OBTAINED—RIGHT TO USE PAPERS IN EVIDENCE.

On the arrest of a defendant by officers of the United States, a trunk check was found on his person, and on its presentation to a railroad company the officers obtained the trunk, which was searched, and papers taken therefrom which were held by the district attorney to be used as evidence on defendant's trial on a criminal charge. *Held*, that defendant was not entitled to a return of such papers before the trial, and that they were not obtained as the result of an unlawful search and seizure in violation of the fourth constitutional amendment, but the rights of the defendant were not greater than if they had been taken from his person at the time of his arrest, and the district attorney had the right to hold and use the same as evidence, subject to objections made when they were offered as to their admissibility, or on the ground that their use would be compelling defendant to testify against himself, contrary to the provisions of the fifth amendment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, § 877.]

On Motion by Defendant for an Order Requiring a Return of Property Taken from his Possession After his Arrest.

Henry L. Stimson, U. S. Atty., and Thomas D. Thacher, Asst. U. S. Atty.

Hugh Gordon Miller, for defendants.

CHATFIELD, District Judge. The defendant Wilson was under arrest in the Southern district of New York. Upon his person were found certain chattels, among them a trunk check. Upon presentation of this check to the railroad company, the trunk was delivered to the United States attorney for the Southern district of New York. Certain papers found in this trunk by the United States attorney are held by him as evidence to be used in the case now about to go to trial, upon an indictment filed in this district. The defendant has

therefore moved for a return of the trunk and its contents, upon a claim that they are his personal property, taken from him after a search alleged to be contrary to the provisions of the fourth amendment to the Constitution of the United States, thus compelling the defendant to testify against himself, contrary to the fifth amendment of the Constitution.

The provisions of the Constitution are as follows:

"Amend. 4. The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

"Amend. 5. No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall he be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

Recovery of personal property must ordinarily be the subject of an action at law. Similarly, objection against the use of evidence can ordinarily be urged only upon a trial, at a time when the evidence is offered. But inasmuch as the case has been called for trial, and a demurrer argued and overruled, the papers to be used as evidence could be impounded, and it seems to the court that the question raised is one of general principle, not entirely covered by the rules as to the admissibility of evidence. The question therefore can be better disposed of on the merits than left until the evidence shall be offered on the trial and in the presence of a jury.

The only questions to be then considered would be those of materiality and relevancy, which would not be affected by this question, and competency, which would usually be determined by the conditions under which the documents offered as evidence came into existence, rather than the way in which the government obtained them. It is true that, under objection on the trial, a statement or confession by the defendant is inadmissible, unless the court is satisfied that it was voluntary and made under such conditions that no coercion or inducement could be said to have influenced the defendant to vary from a truthful recital. Bram v. U. S., 168 U. S. 543, 18 Sup. Ct. 183, 42 L. Ed. 568. But upon the offer of such a statement or confession, an objection on behalf of the defendant will raise the direct question of the voluntary character of the transactions under the provisions of amendments 4 and 5.

So, upon the trial of this particular case, an offer of the testimony and an objection on the part of the defendant must be ruled upon by the trial judge, and any determination now cannot preclude a decision upon the facts appearing at that time, nor can it now be known whether objection will be made; but if, as claimed, a great and unconstitutional wrong has been done the defendant by the district attorney, who is now urging the trial of the charge, it would seem that this court (in protecting the rights of defendants actually on the eve

of trial and presumed to be innocent) should consider whether the property found on the defendant at the time of his arrest is to be returned to him before that trial. Without any forced assumption of jurisdiction, it would seem that this court can consider the right of the defendant to the return before trial of such personal property as the contents of his trunk, obtained at the time of his arrest by means of a check taken from his pocket, all of this property being within the control of the court, if it is to be used as evidence. If objection is made during trial to the use of papers and documents, upon the ground that they have been unlawfully seized, and in that sense that the defendant has been compelled to testify against himself, contrary to the provisions of the amendments above cited, the decision·in the case of Boyd v. United States, 116 U. S. 630–631, 6 Sup. Ct. 524, 29 L. Ed. 746, and the general language of the court throughout that opinion would seem to indicate that such an objection could not only be considered, but, if well founded, could be sustained.

But it is evident from many decisions upon the subject that upon the trial of an action the manner of obtaining documentary evidence or specific chattels will not be looked into, and any objection because of trespass will be overruled, unless the defendant has been compelled to produce papers in the case, and thus testify against himself. This proposition is stated by the Supreme Court of the United States, in the case of Adams v. New York, 192 U. S. 585, 594, 24 Sup. Ct. 372, 48 L. Ed. 575, and is so well recognized that it cannot be the subject of much discussion. Further, property found upon the defendant, or in his immediate possession, at the time of his arrest, has always been considered properly usable as evidence, and no action for trespass will lie for the retention of such property by the officers of the law, for the purpose of using that property as evidence. The distinction would seem to be that the property must be material, or seem to be material, as evidence on the charge which is made against the defendant. The old case of Dillon v. O'Brien & Davis, 16 Cox, C. C. 245, and other cases cited by the district attorney, viz., Spalding v. Preston, 21 Vt. 15, 50 Am. Dec. 68, Reifsnyder v. Lee, 44 Iowa, 101, 24 Am. Rep. 733, Rex v. O'Donnell, 7 C. P. 138, and Rex v. Burgiss, 7 C. P. 488, hold substantially to the same effect. The language used by the Supreme Court in the case of Boyd v. United States, supra, is substantially the only foundation for this particular application. That case arose from a seizure under the internal revenue laws, followed by an action for the forfeiture of the property seized, and an attempt was made, under a statute of the United States, to compel the claimant of the goods to produce his books. The court, holding that the action was in its nature criminal, came to the conclusion that such a compulsory production of books and papers would be contrary to the provisions of amendment 5 of the Constitution, and that to allow the district attorney, under such compulsion, to search through the papers of the claimant for evidence, would as well be a violation of amendment 5 of the Constitution.

A great deal of discussion is had in the case over the English statutes and declarations of the courts of England upon rights of search. A search for stolen goods is expressly excepted. Upon page 630 of

116 U. S. and page 532 of 6 Sup. Ct. (29 L. Ed. 746), in the Boyd Case, the court uses the following language:

"It is not the breaking of his doors, and the rummaging of his drawers, that constitutes the essence of the offense; but it is the invasion of his indefeasible right of personal security, personal liberty, and private property, where that right has never been forfeited by his conviction of some public offense—it is the invasion of this sacred right which underlies and constitutes the essence of Lord Camden's judgment. Breaking into a house and opening boxes and drawers are circumstances of aggravation; but any forcible and compulsory extortion of a man's own testimony or of his private papers to be used as evidence to convict him of crime or to forfeit his goods is within the condemnation of that judgment. In this regard the fourth and fifth amendments run almost into each other."

The language of the above quotation, and that contained in the following sentence upon page 631 of 116 U. S. and page 533 of 6 Sup. Ct. (29 L. Ed. 746), of the same opinion:

"It is elementary knowledge that one cardinal rule of the court of chancery is never to decree a discovery which might tend to convict the party of a crime, or to forfeit his property, and any compulsory discovery by extorting the party's oath, or compelling the production of his private books and papers, to convict him of crime, or to forfeit his property, is contrary to the principles of a free government"

—would seem to uphold to some extent the contention of the defendant upon this motion. But it is considered that the language was used with reference to the matter under consideration in that case, and with respect to the enforced examination and production of papers still in the possession of the defendant, in the course of a judicial proceeding, rather than with relation to the securing of documents for use as evidence under circumstances substantially equivalent to the search of the defendant upon his arrest.

In the case of In re Pacific Ry. Comm. (C. C.) 32 Fed. 251, Mr. Justice Field quotes from the Boyd Case, supra, and says that the language quoted above "had reference, it is true, to the compulsory production of papers as a foundation for criminal proceedings," and approves the principles laid down by Lord Camden, in the case of Entick v. Carrington, 19 How. St. Tr. 1029, to show that compulsory process, either in a judicial proceeding or before a commission, is in violation of constitutional liberty and security of the property; but Judge Field goes on to say:

"Of all the rights of the citizen, few are of greater importance or more essential to his peace and happiness than the right of personal security, and that involves, not merely protection of his person from assault, but exemption of his private affairs, books, and papers from the inspection and scrutiny of others. * * * The law provides for the * * * seizure of criminating papers necessary for the prosecution of offenders against public justice, and only in one of these ways can they be obtained, and their contents made known, against the will of the owners."

This language, too, might be used as a basis for the defendant's application in this case; but, again, it is considered that the learned justice had in mind a compulsory production, rather than the taking, in connection with arrest, of the property and papers sought to be used as evidence.

The provisions of the Constitution and the principles above referred to have been embodied in section 860 of the Revised Statutes (U. S. Comp. St. 1901, p. 661), which says:

"No pleading of a party, nor any discovery or evidence obtained from a party or witness by means of a judicial proceeding in this or any foreign country, shall be given in evidence, or in any manner used against him or his property or estate, in any court of the United States in any criminal proceeding," etc.

In Brown v. Walker, 161 U. S. 591, 16 Sup. Ct. 644, 40 L. Ed. 819, the distinction is plainly set forth between the immunity given by this statute and the provisions of the Constitution, and the right to refrain from testifying where immunity is given. Again, in McKnight v. United States, 115 Fed. 972, 54 C. C. A. 358, it has been held that, for the purpose of giving secondary evidence, it is improper to demand the production of papers, and put the defendant in the position of claiming his immunity, thus indirectly compelling him to testify against himself, or, if he does not produce the documents desired, to admit that their production would incriminate him. But none of these cases and none of the language quoted apply directly to the question in point.

Suppose it should be urged that if a man were accused of murder, and the body of his victim were believed to be in a trunk among his private effects, and the police, with the consent of the owner of the property on which the goods were stored, should break into the trunk and secure evidence as to the corpus delicti, could it be urged that this trunk and its contents were the personal property of the defendant, and could not be searched or seized without his consent, thus leaving it within the power of the defendant to make it impossible to prove the essential element of his crime? Or, suppose that by a ruse the officers of the government were admitted to the home of a defendant by the defendant's wife, and there found objects and papers bearing upon the crime, could the defendant assert that he had not given his permission, and that therefore the evidence obtained could neither be scrutinized nor used, and that in addition he would have the right to obtain damages for the trespass involved? Are not such cases on all fours with the search of the defendant himself at the time of his arrest, and the right to use anything that may be found upon him? In other words, do the terms "compulsory discovery" and "seizure" refer to more than the exercise of compulsion upon the defendant himself, either during the trial, or while he is under arrest, to compel him to produce, or to furnish information as to, property and papers which are wanted as evidence? Or, again, is not the right in property and papers similar to that with respect to oral statements? And is not the test rather to see if the production has been compelled, than to prohibit the use of everything not voluntarily and knowingly turned over?

In Adams v. New York, supra, the police entered upon the premises by right of a search warrant. They examined and seized many more papers than those for which the search warrant had been issued. Their entry was lawful; but, even if unlawful, the obtaining

of the papers was in connection with the crime, and it cannot be argued that they should have applied to the defendant for leave to search for and seize these papers, and thus compel him to consent or to refuse upon the ground that he would be incriminated.

In the case of State of Conn. v. Griswold, 67 Conn. 290, 34 Atl. 1046, 33 L. R. A. 227, the entry of a police officer, by consent of a servant, and the finding of an envelope, later used as evidence, was justified under the Constitution.

In the case of Newberry v. Carpenter, 107 Mich. 567, 65 N. W. 530, 31 L. R. A. 163, 61 Am. St. Rep. 346, the court said:

"There is no statute which authorizes an officer to take from a prisoner such evidence of guilt as may be found on the person—the bloody knife. * * * It is not only the right, but the duty, of an officer making an arrest to take from the prisoner, not only stolen goods, but any articles which may be of use as proof in the trial of the offense with which the prisoner is charged."

The precise point urged upon this motion was decided upon an application for an injunction directed to the district attorney to deliver over certain letters in the case of J. Morgan Smith v. William Travers Jerome, 47 Misc. Rep. 22, 93 N. Y. Supp. 202. The letters in question had been seized in Cincinnati, in the room of the defendant, and were brought with him to New York, and Judge Gaynor, who in his many decisions has held the police strictly accountable for their acts, said:

"The police have the power, and it is also their duty, to search the person of one lawfully arrested, and also the room or place in which he is arrested, and also any other place to which they can get lawful access, for articles that may be used in evidence to prove the charge on which he is arrested. We have no statute defining this power or prescribing this duty, but the ends of justice require that they should exist, and they have been exercised under the common law from time immemorial. * * * This right and duty of search and seizure extend, however, only to articles which furnish evidence against the accused. They do not, for instance. permit the seizure of his money unless it furnishes evidence of his guilt, and in no other case may a prisoner's money or other property be taken from him."

The doctrine urged by the defendant would result, if the language of the Boyd Case, supra, should be construed in the sense which the defendant asks, in the strange situation in criminal cases, that no evidence in the way of property or papers could be seized or used against the accused unless found upon his person at the time of the arrest, or voluntarily delivered by him to the police, or unless the property and papers belonged to persons other than the defendant himself. The provisions of amendments 4 and 5 to the Constitution would be extended to read that no property of the defendant shall be used as evidence against him, without his consent, unless taken at the time of the arrest of the defendant, or that no papers of the defendant, however obtained, shall be read, in order to see whether their contents would be evidence in the case, unless the defendant has voluntarily consented, or unless they were found upon his person when arrested. Such meaning would render futile and ridiculous all rulings upon the competency or admissibility of property and documents of defendants, in all the criminal cases which have been tried,

or in any which may come up in the future, unless their production could pass the one test of having been voluntarily furnished by the defendant, if not taken with him at the time of his apprehension. It would seem that the mere statement of these propositions and a recital of the cases cited would decide the question at bar. All courts should see that the property of the defendant in the possession of the officers of the court is returned to him, when no longer needed, unless forfeited or contraband. So, also, any property not material as evidence should be restored to the defendant as soon as the ends of justice, in the light of a due preparation for trial, may allow a decision to be made. But property needed as evidence should be retained, and its possession in the hands of officers of the law protected.

With the question of the defendant's rights in a suit for trespass this court has nothing to do beyond the principle just stated, and upon the trial of this action the circumstances brought out by the testimony must be considered in order to determine whether the evidence offered is admissible, and whether the defendant has been compelled to furnish the testimony against his will.

As was said at the beginning of this opinion, an objection to testimony cannot be passed upon in advance of the trial; but for the reasons stated the application of the defendant to have certain papers turned over to him, prior to the trial, must be denied.