LUM YAN v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 13, 1912.)

No. 1,984.

1. CRIMINAL LAW (§ 395*)—EVIDENCE PROCURED ON SEIZURE—ADMISSIBILITY.
Letters are not inadmissible against accused, because unlawfully seized by authorities, where the search does not appear to have been seriously resisted.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 877; Dec. Dig. § 395.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2, BIGAMY (§ 9*)—EVIDENCE—ADMISSIBILITY.

In a bigamy trial, a letter to accused from his son, speaking of the latter's mother as accused's wife, and a reply letter acknowledging obligation to her, were admissible to show the former marriage.

[Ed. Note.—For other cases, see Bigamy, Cent. Dig. §§ 34–53; Dec. Dig. § 9.*]

In Error to the District Court of the United States for the Territory of Hawaii.

Lum Yan was convicted of bigamy, and he brings error. Affirmed.

John W. Cathcart, Fred W. Milverton, and E. C. Peters, for plaintiff in error.

Robert W. Breckons, U. S. Atty., and W. T. Rawlins, Asst. U. S. Atty. (Robert T. Devlin, U. S. Atty., and Benjamin L. McKinley, Asst. U. S. Atty., of counsel), for the United States.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge. The plaintiff in error was indicted, tried, and convicted of the crime of bigamy. During the course of the trial two letters were offered and received in evidence, over the objection of counsel for plaintiff in error, and the action of the court in admitting the letters is assigned as error. The first of these letters is addressed on the envelope:

"To His Father, Lin Tsan-yuan, from Lin I-man, of the Village of Hengwei, in the District of Hsiang."

The letter reads:

"Dear Father: * * * Since your business is so prosperous and you are in need of some one to help you in your many affairs, my mother and I are very desirous of coming to you that day and night we may all be happy together. Should you get a certificate permitting you to bring your wife (to the United States), you can intrust it to some friend to bring it over and thus save expense. * * * As to your remark about marrying a wife, mother is very unwilling, since her two sons are already grown and the family is poor. * * * I can only beg you, my father, to remember your family kindly."

The second letter is addressed on the envelope:

"A Letter of Peace and under Separate Cover [a Draft] for $50 Current Coin at Exchange of .72 [i. e., Mexican dollars, which are valued at .72 tael, or Chinese ounce]. * * * From Lin Tsan-yuan [same as Lum Yan]."

The letter reads:

"To My Son, Lin I-man (Cantonese Lum Yet-mun): * * * I should like very much to do as you suggest, intrust to some friend the necessary papers to bring you and your mother here, but to do so is very difficult. In the first place, living here is very expensive. * * * This month I find I can send you [a draft for] $50 current coin of .72 [i. e., Mexican dollars—.72 tael]. On receipt you can use it for household expenses. It is good that you and your brother are staying at home. The important thing is to heed your mother's instructions."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

These letters are offered as tending to show that the plaintiff in error was married to a woman in China. A subsequent marriage to another woman was clearly shown by the testimony. These letters were procured from the plaintiff in error by the United States district attorney and one Loo Joe—a person connected with the Department of Justice in the capacity of interpreter—and a deputy marshal of the United States for the district of Hawaii, who went to the house of the plaintiff in error for the purpose of getting from him his registration papers. In the effort to find such papers, the plaintiff in error produced a box, which the district attorney took into his possession and carried away to his office. The box being opened by keys produced by the plaintiff in error, the officers made search of the contents, and in doing so found the letters. They had translations made of them, and on the trial produced them in evidence, as previously indicated.

Counsel for plaintiff in error insists that the letters should not have been admitted in evidence, for two reasons: First, that they were procured by an unlawful search and seizure, contrary to the fourth amendment to the Constitution; and, second, that they were not sufficiently connected with the plaintiff in error, by other evidence in the case, to be binding upon him.

[1] Answering the first objection, it will be premised that the objection to receiving the letters in evidence as being private papers, taken without the accused's assent, was raised for the first time in the trial of the cause for the offense charged. The question was not in any way made or interposed in any attempt to resist an unlawful seizure of the documents. Indeed, it does not appear that plaintiff in error seriously resisted the search that was made. Under such circumstances, it has been held by the Supreme Court of the United States (Adams v. New York, 192 U. S. 585, 24 Sup. Ct. 372, 48 L. Ed. 575) that such papers are competent as proof tending to show the guilt of the accused, although they may have come into the possession of the officers irregularly, or by compulsory process. The court in that case says:

"In such cases the weight of authority, as well as reason, limits the inquiry to the competency of the proffered testimony, and the courts do not stop to inquire as to the means by which the evidence was obtained."

The court distinguishes the case of Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, relied upon by counsel for plaintiff in error, and we think that case is clearly distinguishable, also, from the one at bar, and that the Adams Case is controlling here. This disposes of the first question presented.

[2] The other proposition is that the letters do not tend to connect plaintiff in error with the crime charged. We cannot agree with counsel as to this, for it seems perfectly manifest that they do. The first letter is from the son to the father, and speaks of the mother in such a way as to leave the strongest inference possible that she is the wife of the father. In fact, the letter refers to the mother as "your [the accused's] wife." The second letter, which we presume was written, but not sent, is from the father to the son, and acknowl-

edges by inference his obligations to the mother of the son, and directs the son that the important thing is to heed his mother's instructions. These letters, being found in the possession of the plaintiff in error, together with the way in which they are addressed, would seem so closely to connect them with the accused as to make them evidence against him, thus tending to show that he has a wife by previous marriage.

The judgment of the court below will therefore be affirmed.