## UNITED STATES OF AMERICA

### *v.*

### FONG HING.

#### December 6, 1913.

1. *Constitutional law—Search and seizure—Self-incrimination:* The incidental seizure of an incriminating account book in the execution of a search warrant for contraband opium, is not an unreasonable search or seizure or an infringement of the guaranty against self-incrimination.

2. *Search warrant—Federal statutes:* Statutory authority for search warrants in case of contraband opium, discussed.

*Indictment:* Motion for return of seized property, evidence of crime.

*E. M. Watson (Thompson, Wilder, Watson & Lymer* with him) for the motion.

*R. W. Breckons,* U. S. District Attorney, contra.

CLEMONS, J. The defendant, here indicted for unlawfully importing opium, petitions for an order directing the district attorney and the collector of customs for the port of Honolulu to return to him an account book alleged to have been wrongfully seized by the collector. The seizure

was made by the collector in the execution of a search warrant issued by a United States commissioner, authorizing search for opium unlawfully brought into the United States and concealed in and upon the defendant's premises.

The defendant had been arrested with six tins of opium in his possession. On the following morning the police who had him in custody turned over to the district attorney a bunch of keys and a book containing the combination of a safe, which were found by the police on search of his person at the time of his arrest. With the aid of the keys and combination, the collector, in executing the search warrant, on the same day entered the defendant's place of business and opened his safe. The collector there found the book in question which he turned over to the district attorney.

In the petition it is alleged under oath of the defendant that the account book contains a record and his only record of moneys owing to him without which it is "impossible to accurately and adequately collect said debts;" that he is informed and believes that the district attorney is about to use certain entries therein as evidence against him in this action; that he is advised by counsel and believes that these entries will tend to incriminate him upon his trial under the above indictment; that the use of these entries would be a violation of his right of freedom from compulsion to give testimony against himself (Constitution, Amendment V); and that the acts of the collector violated his right to be protected against unreasonable searches and seizures (Constitution, Amendment IV).

Perhaps the defendant might justly be precluded from the peremptory remedy which he seeks, by reason of his long delay in moving for it. But as the extended delays in this case have been due largely to the indulgence given, with the acquiesence of the district attorney, because of the protracted illness of that one of the defendant's counsel who has had the defense especially in charge, I shall

dispose of the petition on other and more vital grounds.

[1] It is the law of the Supreme Court of the United States and of this court, " 'that though papers and other subjects of evidence may have been illegally taken from the possession of the party against whom they are offered or otherwise unlawfully obtained, this is no valid objection to their admissibility if they are pertinent to the issue. The court will not take notice how they were obtained, whether lawfully or unlawfully, nor will it form an issue to determine that question.' " *Adams v. New York*, 192 U. S. 585, 594-595, 597, 598; *United States v. Miyamura*, 2 U. S. Dist. Ct. Haw. 3, 7; *Lum Yan v. United States*, 193 Fed. 970, affirming a judgment of this court. See also *Territory v. Sing Kee*, 14 Haw. 586, 588. I can see no reason why the same considerations which have led these controlling authorities to give no heed to a defendant's complaint that he has been deprived of his constitutional right of immunity from unreasonable searches and seizures and from self-incrimination, when this complaint is made on the offering in evidence of papers obtained on an illegal search and seizure, do not lead to a similar conclusion, when the complaint is made before trial. In other words, in such cases the papers are to be used for the purposes of the prosecution, notwithstanding any trespass or other wrong to the defendant in their obtention, and the defendant is left to whatever direct remedies the law may afford. See 4 Wig. Ev., secs. 2183, 2264. The fact that they are to be used as evidence by the prosecution, or that the prosecuting attorney declares such purpose, is enough in ordinary cases at least to stay the court from making any peremptory order disposing of the papers on an issue collateral to the real issue in the case. See *Com. v. Dana*, 2 Metc. (Mass.) 329, 337. The fact of their prospective use as evidence would make a case different from that of *Ex parte Craig*, 4 Wash. (C. C.) 710, 6 Fed. Cas. 710, No. 3321, in which Justice Washington ordered re-

turned to a defendant in a criminal case money taken from his person upon his arrest; for the Justice adverted to the fact that the "notes in question are admitted to be true and genuine [the offense charged being forgery], and no case of any kind is made aginst the prisoner in relation to them, *nor can they be used as evidence against the prisoner,* upon his trial for having counterfeited other notes."

As regards expressions in the books to the effect that the constitutional prohibitions against seizures are "limitations upon the power of the State   .   .   .   and have no reference to unauthorized acts of individuals," 35 Cyc. 1274 and cases cited, the restriction is held by authority which has the approval of Mr. Wigmore, as intended to act upon legislative bodies, or upon executives in attempts to enforce inhibited legislation, or upon the judiciary in respect to such legislation, but not upon private persons or upon officials who, exceeding or abusing their authority, are deemed to act as individuals and not as agents of the State. 4 Wig. Ev., sec. 2183, quoting *Williams v. State,* 100 Ga. 511, 28 S. E. 624, 627-628.   The general principle above quoted from the encyclopaedia is, I take it, what is referred to in the dictum of this court in the *Miyamura* case, supra, at page 7, in the first part of the following sentence (the last part only being the court's conclusion on the facts involved): "Seizures of papers and other property, *by process of the court,* to be used as evidence against the party in a criminal case in whose possession they are, would be unreasonable and inconsistent with the fourth and fifth amendments to the Constitution, and papers and property so obtained may not be admitted as evidence in such cases; but in those cases in which illegal seizures are made of papers or property in the possession of a party in a criminal case, to be used against him *outside of the process of the court,* the court will not consider the illegality of the seizure, but will admit the papers or property so seized, if competent and pertinent as evidence, and the party from whom the

goods are taken will be left to his legal remedies in trespass or otherwise." And this general principle is applied in manner as the Georgia decision, supra, has pointed out.

The question has been to me one of some difficulty, but much of the difficulty has been removed by the realization that obiter expressions in the leading case of *Boyd v. United States,* 116, U. S. 616, are to be controlled by the more direct expressions of the Supreme Court in its later decision in the *Adams* case, supra, in which the earlier case is distinguished. The minority of courts, including, e. g., Vermont, in *State v. Slamon,* 73 Vt. 212, 50 Atl. 1097, are noted by Mr. Wigmore to have been misled by what he terms "the erroneous view" of the dicta in the Boyd decision, from which dicta, also, Waite, C. J., and Miller, J., dissented, though concurring in the concluion. 4 Wig. Ev., secs. 2264, 2183. In the supplement to his treatise on evidence, Mr. Wigmore says further: "That case, however, in later Federal opinions, has in effect been pared down, and for practical purposes repudiated (in respect to the obiter statements of the majority opinion above noted)." 5 Wig. Ev., sec. 2264.

Moreover, under the authorities, I cannot say that the search and seizure here were unreasonable and, so, unconstitutional. The authorities, on grounds of public policy, go a long way to sustain the seizure of things which may be used to prove an alleged offense. Thus, they hold that such things may be seized under a warrant authorizing search for stolen or contraband goods: *Adams v. New York,* 192 U. S. 585, 598; *United States v. Wilson,* 163 Fed. 338, 342, 343; and, even, that such things may be seized without any search warrant in the course of the arrest of the accused. *Id.,* 341. Rulings of this kind are, I believe, based on a fair reading of the history of the times which led eventually to our constitutional provision against unreasonable searches and seizures. History warrants no conclusion that the protest of our ancestors had in view the tying of our police

hand and foot. In this connection a decision of Chief Justice Abbott (Lord Tenterden) may be cited for its suggestive obiter expression, contained in the following quotation:

"The warrant produced in evidence authorized the seizure of certain articles, but unfortunately some other articles also were taken. *If those others had been likely to furnish evidence of the identity of the articles stolen and mentioned in the warrant, there might have been reasonable ground for seizing them, although not specified in the warrant.* But the tin pan and sieve were not such articles. I am therefore of the opinion that the nonsuit cannot be supported. I have expressed myself in this manner in order to prevent the supposition, that a constable seizing articles not mentioned in the warrant under which he acts, is necessarily a trespasser." *Crozier v. Cundey,* (1827), 6 B. & C. 232, 108 Eng. Reprint, 439.

[2] The search warrant here directed merely a search for opium alleged to have been unlawfully imported. Though no objection was raised of any want of authority for a warrant of this kind, I at first doubted the existence of any such authority, and it may, therefore, be well to dispose of any question in that regard because of its possible bearing on the broad question at issue. The warrant recited that it was issued by virtue of sections 3065 and 3066 of the Revised Statutes, but as these sections were found in a chapter entitled "Enforcement of Duty-Laws," under a title "Collection of Duties," the recital of the warrant appeared not to justify a search for something, to-wit, opium, which was not only not dutiable but even denied importation. Thus, the authorization of a search for merchandise "imported contrary to law," Revised Statutes, section 3061, would at first appear to apply to dutiable articles imported contrary to law; but as under the preceding general title "Duties upon Imports," I find the very first section, 2491, and other sections, e. g., 2496, to treat of *prohibited* articles, it would seem as if the words, "imported contrary to law," in the chapter on "Enforcement of Duty-Laws," in the succeeding title "Collection of Duties," might be applied to

search for prohibited articles. Although sections 2491 et seq. may have been repealed by subsequent tariff acts, they may be resorted to in the construction of other provisions which were embodied in the Revised Statutes. though originally enacted at different times. See *United States v. Findlay,* post. The words of section 3061, "which he shall have reasonable cause to believe is subject to duty, *or* to have been unlawfully introduced into the United States," indicate the contemplation of non-dutiable articles "unlawfully introduced." I have not failed to observe that section 2492 provides expressly for search in case of violation of section 2491; but for cases under section 2496, for instance, there is no special provision, and the provisions of sections 3065 and 3066, in connection with section 3061, are broad enough to cover contraband opium. And considering the object of these sections of title XXXIV., chapter 10, there is no reason why the useful and necessary power there given to courts and to executives should be narrowed, but every reason for the opposite view.

The language of McGrath, C. J., dissenting, in the case of *Newberry v. Carpenter,* 65 N. W. 530, 534 (Mich.), has application here: "Police officers must be given a reasonable latitude in the pursuit of offenders, the detection of crime, and the collection of evidence." Also the language of Justice Gaynor, in the case of *Smith v. Jerome,* 93 N. Y. Supp. 202, 203, approved by the court in the case of *United States v. Wilson,* supra, 343:

"The police have the power and it is also their duty to search the person of one lawfully arrested, and also the room or place in which he is arrested, and also any other place to which they can get lawful access, for articles that may be used in evidence to prove the charge on which he is arrested. We have no statute defining this power or prescribing this duty, but the ends of justice require that they should exist, and they have been exercised under the common law from time immemorial. The authorities on this head seem to be few, but only because the thing has seldom

if ever been questioned. We have at least one such authority in this state (*Houghton v. Bachman,* 47 Barb. 388), and there are several in England. This right and duty of search and seizure extend, however, only to articles which furnish evidence against the accused. They do not, for instance, permit the seizure of his money, unless it furnishes evidence of his guilt, and in no other case may a prisoner's money or other property be taken from him."

Let the petition be denied. The defendant may be permitted, however, to examine his account book and make copies of entries therein under proper precautions for its safety to be provided by further order of the court as may be reasonably satisfactory to defendant's counsel and to the district attorney.

---

See *Weeks v. United States,* 232 U. S. 383, 394-395; *Territory v. Hoo Koon,* 22 Haw. 597.