69 N.J. Super. 146 (1961)
173 A.2d 906
IN THE MATTER OF THE APPLICATION OF ALEXANDER NICHOLAS BOGISH.
Superior Court of New Jersey, Law Division.
Decided September 21, 1961.
*147 Mr. C. Zachary Seltzer, attorney for petitioner.
Mr. Norman Heine, Camden County Prosecutor (Mr. Stephen M. Gretzkowski, Assistant Prosecutor, of counsel), attorney for respondent.
MARTINO, J.C.C. (temporarily assigned).
Chief Justice Marshall first described the term habeas corpus as a generic term. He said it encompassed, in addition to the great writ (habeas corpus ad subjiciendum for an inquiry into the cause of restraint), the writ of habeas corpus ad prosequendum. The Chief Justice noted, however, that when used in the Constitution, that is,
"When used singly  when we say the Writ of Habeas Corpus, without addition we most generally mean that Great Writ." Ex parte Bollman, 4 Cranch 75, 95, 2 L.Ed. 554 (1807).
This great writ has suffered much by its abuse, yet it has had a great influence in the molding of those liberties which to us are sacred.
In this case the great writ was allowed and the matter proceeded to a plenary hearing. Counsel for petitioner was appointed and the trial transcript was supplied at the county's expense.
*148 The petitioner was tried and convicted on an indictment which charged him with violation of R.S. 24:18-4 in that he had in his possession heroin. He was sentenced to a term of five to seven years, which judgment was entered on February 26, 1959. While he was confined to the New Jersey State Prison he addressed a letter to this court which letter was treated as an application for a new trial and he was granted a hearing on April 23, 1959, at which time the application for a new trial was denied. He had privately engaged counsel for his trial and at the hearing for a new trial. He filed a petition for leave to appeal as an indigent in the Superior Court, Appellate Division. This was denied on September 19, 1959.
Another petition for habeas corpus was filed in the Superior Court, Law Division, on October 20, 1959. This petition was denied by a formal but not reported opinion filed on October 26, 1959. He then filed a notice of appeal on November 6, 1959, which was followed by a petition for leave to appeal as an indigent, which petition was denied by the Appellate Division on December 17, 1959. He then filed a notice of appeal from the Appellate Division ruling, and on January 6, 1960 he filed a petition for leave to appeal as an indigent in the Supreme Court of New Jersey. This petition was also denied on March 14, 1960. A petition for writ of certiorari, addressed to the Supreme Court of the United States, was denied on June 13, 1960, Bogish v. New Jersey, 363 U.S. 824, 80 S.Ct. 1265, 4 L.Ed.2d 1520 (1960). After this denial he petitioned the United States District Court, District of New Jersey, for a writ of habeas corpus and invoked that court's jurisdiction under Section 2241 of 28 U.S.C.A. Chief Judge Smith of that court filed a formal opinion and order in which he reviewed all the proceedings pursued by this relator. He denied the application, Application of Alexander Nicholas Bogish, Docket No. Civil 78-60, decided August 10, 1960 (not reported). Petitioner again petitioned the Superior Court, *149 Law Division, for a writ, and this was denied on December 7, 1960. Another application was made to the United States Supreme Court, and this was denied on July 19, 1961 (not reported officially but memo decision found at 366 U.S. 957, 81 S.Ct. 1947, 6 L.Ed.2d 1267). The petitioner has never denied that he was guilty of possession of heroin but insists that the officers involved were guilty of unreasonable search and seizure.
The following facts may be summarized from the trial testimony: On September 10, 1958, as the petitioner was alighting from a bus at the corner of Broadway and Lawrence Street in the City of Camden, a Camden city detective, who was accompanied by a federal agent, approached the bus exit. As the petitioner was leaving the bus the city detective observed a packet in one of his hands and as the police officer started to identify himself to the petitioner he observed that the petitioner started to move the hand containing the packet toward his mouth, whereupon he grabbed the petitioner's arm and the packet fell to the ground. As this incident occurred another federal agent, who was in the vicinity observed a skirmish involving the petitioner and the detective and the other agent, each of whom was attempting to retrieve the packet from the ground. The city detective was able to retrieve the packet with the assistance of the agent. There was no attempt to hide the fact that the federal agents were in the area as a result of a previous arrangement. By whom this arrangement was made was never established. Neither the city detective nor the federal agents were armed with search or arrest warrants. The petitioner went to city hall peaceably. He was indicted by the Camden County grand jury and was tried on February 16, 1959. As related earlier, he was convicted and later granted a hearing on an informal application for a new trial, which was denied. The petitioner, on the occasion of the application for a new trial, confined the bulk of his argument, through counsel, to the veracity of the State's witnesses, and, *150 since he failed to take the witness stand at the original trial to deny the facts, this court decided that there was no justifiable reason to disturb that verdict.
The recent decision in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), has aroused the petitioner's desire to gain his freedom, and hence this present application for a writ of habeas corpus. The petitioner has always contended that the evidence, which was obtained from him without the benefit of either a search or arrest warrant, was illegally obtained and violated his constitutional rights.
While the petitioner did not testify at the original trial he did take the stand on the return of this writ and for the first time he gave his version of what occurred on the day of his arrest. He stated that as he left the bus he was seized with one arm under his elbow and the other arm around his wrist, by a person who failed to identify himself, in which position he was held until another officer came over to assist. He contends now that the contraband was in his mouth and it was forcibly taken from his mouth by a federal officer named Bendon. The original trial minutes indicate that officer Bendon was a witness at the original trial and he came upon the skirmish after it had started, and his testimony was in conflict with that of the defendant. Agent Bendon corroborated the city police officer as to the circumstances surrounding the recovery of the contraband. Significantly, during the cross-examination of agent Bendon by petitioner's counsel no reference was made or any indication given by the defense in his cross-examination that the petitioner at any time had the contraband in his mouth.
The petitioner has been incarcerated for the past two years and apparently has had a reading acquaintance with those federal decisions which have construed illegal search and seizure, and at this late date his testimony is beginning to fit the factual content of those cases which have resulted in freedom for certain defendants. The petitioner's testimony lacks trustworthiness, although if it had been given at the *151 time of the trial it might have justified some consideration to justify the position he now takes.
At the original trial the admissibility of the evidence, assuming but not deciding that it was illegally obtained, was ruled by the decision of Wolf v. People of State of Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), which has since been overruled by Mapp v. Ohio, supra. Since the petitioner was undoubtedly acquainted with Wolf v. People of State of Colorado, supra, he attempted to fit the factual content of his case within the limits of Rea v. United States, 350 U.S. 214, 76 S.Ct. 292, 100 L.Ed. 233 (1956), in that federal agents were using city detectives to perform an act for them in the circumvention of due process. The Rea case, supra, and others similar thereto are inapposite. The federal officer or officers in this case did not arrest, did not seize the evidence, although one agent did corroborate the facts surrounding the arrest following the exposure of the illicit evidence. The principal purpose of the Federal Government's witness was to establish the content of the seized evidence.
The laws of this State afford every person convicted of crime a right to appeal, R.R. 1:2-7(a)(c), 1:2-8(a)(c), upon his compliance with the terms and conditions therein prescribed. This right of appeal does not justify the use of the great writ. Clifford v. Heller, 63 N.J.L. 105 (Sup. Ct. 1899); State v. Osborne, 79 N.J. Eq. 430 (Ch. 1911); In re Hall, 94 N.J. Eq. 108 (Ch. 1922); In re Graham, 13 N.J. Super. 449 (App. Div. 1951); In re Tremper, 126 N.J. Eq. 276 (Ch. 1939), affirmed 129 N.J. Eq. 274 (E. & A. 1940).
While the United States Supreme Court has relentlessly upheld the rights of defendants who have raised and established a violation of either or both the Fourth and Fifth Amendments, it has always been the rule of that court that where the defendant has knowledge of the unlawful seizure he must move for its suppression before trial. It is usually *152 too late if the accused waits until the seized evidence has been offered at the trial. Segurola v. United States, 275 U.S. 106, 48 S.Ct. 77, 72 L.Ed. 186 (1927); United States v. Wernecke, 138 F.2d 561 (7 Cir. 1943), certiorari denied 321 U.S. 771, 64 S.Ct. 529, 88 L.Ed. 1066 (1944); Patterson v. United States, 31 F.2d 737 (9 Cir. 1929); Brink v. United States, 60 F.2d 231 (6 Cir. 1932), cert. denied 287 U.S. 667, 53 S.Ct. 291, 77 L.Ed. 575 (1932); Harkline v. United States, 4 F.2d 526 (8 Cir. 1925); Souza v. United States, 5 F.2d 9 (9 Cir. 1925); Rossini v. United States, 6 F.2d 350 (8 Cir. 1925); Rocchia v. United States, 78 F.2d 966 (9 Cir. 1935); Durkin v. United States, 62 F.2d 305 (1 Cir. 1932); Peters v. United States, 97 F.2d 500 (9 Cir. 1938); Lyman v. United States, 241 F. 945 (9 Cir. 1917); People v. Winn, 324 Ill. 428, 155 N.E. 337 (Sup. Ct. 1927); Lum Yan v. United States, 193 F. 970 (9 Cir. 1912); McDaniel v. United States, 294 F. 769 (6 Cir. 1924), certiorari denied 264 U.S. 593, 44 S.Ct. 453, 68 L.Ed. 866 (1924), but see United States v. Asendio, 171 F.2d 122 (3 Cir. 1938). This petitioner did not undertake such a step until the evidence was offered during the trial. He was arrested on September 10, 1958, and brought to trial on February 16, 1959. It is true that some states which favored the exclusionary rule prior to Mapp v. Ohio, supra, do not follow the federal pretrial rule. Youman v. Commonwealth, 189 Ky. 152, 224 S.W. 860, 13 A.L.R. 1303 (Ct. App. 1920); McNutt v. State, 143 Miss. 347, 108 So. 721 (Sup. Ct. 1926). There is much to be said on the side of those states which do not follow the federal rule, since the principal reason for the rule enunciated by Chief Justice Taft in Segurola, supra [275 U.S. 106, 48 S.Ct. 79], was that,
"The court will not in trying a criminal cause permit a collateral issue to be raised as to the source of competent evidence * * *."
However, this reason is ineffective to justify the exclusion of evidence which goes to the competency, e.g., confessions *153 in homicide cases, when that question arises at the ordinary trial level. State v. Smith, 32 N.J. 501, 161 A.2d 520 (1960); State v. Cicenia, 6 N.J. 296, 78 A.2d 568 (1951). There is every reason to believe that an assault will be made on those federal cases upholding that theory, particularly when Federal Rule 41(e) (18 U.S.C.A., Rule 41(e)), which controls motions to suppress such evidence is to a degree discretionary with the trial court. United States v. Leiser, 16 F.R.D. 199 (D.C. Mass. 1954); Panzich v. United States, 285 F. 871 (9 Cir. 1923). The decision of the Third Circuit, United States v. Asendio, supra, is indicative of a new trend away from Segurola.
R.R. 3:5-5 appears on its face to require a motion to suppress before trial, but it will be difficult to reconcile this procedure where flagrant violations of a person's constitutional rights are present. However, this case need not be decided on that question because the facts do not justify the conclusion that there was an unreasonable search and seizure. The undisputed trial facts indicate that as a city detective approached the exit of the bus and started to identify himself the petitioner's conduct resulted in the discovery of the contraband evidence. No arrest was made and no indication was given to justify that an arrest would be made. No search was made, none was necessary. The petitioner exposed the evidence and his conduct justified probable cause for his subsequent arrest. The defendant did not take the stand to give a version different from the State's witnesses.
In United States v. Bonanno, 180 F. Supp. 71, 78-79 (D.C.S.D.N.Y. 1960), where cars had been stopped and the occupants questioned briefly, the court aptly stated:
"The problem, as I see it, is not whether the challenged police procedures constituted an `arrest,' but whether these procedures were of such a character that all evidence stemming from them must be suppressed. That every temporary restriction of absolute freedom of movement is not an illegal police action demanding suppression of all resultant evidence is accepted in federal courts, though it is *154 a proposition incompletely articulated. I believe that the relative dearth of authority in point can be explained by the fact that few litigants have ever seriously contended that it was illegal for an officer to stop and question a person unless he had `probable cause' for a formal arrest. While the Fourth Amendment may be construed as encompassing `seizure' of an individual, it cannot be contended that every detention of an individual is such a `seizure.' If that were the case, police investigation would be dealt a crippling blow, by imposing a radical sanction unnecessary for the protection of a free citizenry."
"Probable cause" or "reasonable grounds" justifying an arrest without warrant exists when the facts and circumstances within the arresting officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a narcotics offense has been or is being committed. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).
Federal courts have had occasions to pass on facts analogous to those present in this case in determining what presents probable cause or reasonable grounds for an arrest without a warrant, e.g., where the New York narcotics agency received a memorandum from another federal narcotics agency that the latter had reliable information, without disclosing the source, that the suspect was a contact man for various opium rings; an agent of the New York office received information from other agents that the suspect was planning to leave Chicago by plane and was due to arrive at La Guardia field at a certain time on a specified date; the arresting officer ascertained that the suspect had been arrested twice in the past on narcotics as well as on other criminal charges; when the federal agent, after the suspect's arrival at the airport, showed him his official credentials and asked him to step over to the government car for a talk, the suspect dropped a bottle, and the agent was able to determine from its smell that it contained a mixture of smoking opium and wine. United States v. Li Fat Tong, 152 F.2d 650 (2 Cir. 1945).
*155 In another case the accused couple were together during the evening of their arrest and had been under surveillance of narcotics agents throughout the evening; immediately prior to their arrest the wife dropped a package containing, as the agents reasonably believed, narcotics on the floor of a public garage in an attempt to dispose of the contraband and thus to avoid detection by the agents, who were recognized to be such by the husband (appellant). Brady v. United States, 148 F.2d 394 (9 Cir. 1945).
Another question which need not be decided in view of this court's finding that there was no unreasonable search or seizure is whether the effect of the Mapp v. Ohio, supra, decision is retrospective in nature. The question has been decided in civil actions where it has been held that judicial decisions are retrospective in nature. Fox v. Snow, 6 N.J. 12, 14 (1950); Ross v. Board of Chosen Freeholders of Hudson County, 90 N.J.L. 522, 527 (E. & A. 1917); Dalton v. St. Luke's Catholic Church, 27 N.J. 22 (1958); cf. Johnson v. State, 18 N.J. 422 (1955), a criminal case. The federal system has had occasion to pass on a somewhat analogous situation.
Warring v. Colpoys, 74 App. D.C. 303, 122 F.2d 642, 646, 647, 136 A.L.R. 1025 (D.C. Cir. 1941), certiorari denied 314 U.S. 678, 62 S.Ct. 184, 86 L.Ed. 543 (1941), involved the effect of an overruling decision. In that case petitioner had been convicted in accordance with a Supreme Court interpretation of a statute long before his acts, and when that interpretation was overruled in a later case the petitioner applied for a writ of habeas corpus. The court directed its principal argument toward showing that decisions of unconstitutionality are sometimes prospectively applied. The court said,
"* * * [T]he court [Supreme] did not indicate whether its new law was to be applied to cases decided under the old law previous to its decisions * * *.
We believe the appellant is not entitled to discharge upon the habeas corpus writ. The District Court had the power to sentence *156 him in a criminal contempt proceeding in 1939. The Nye case [Nye v. United States, 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172] in 1941 should not be applied so as to sweep away that power as of 1939. This collateral attack, then, is unavailing."
See, however, dissenting opinion of Mr. Justice Frankfurter in Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1955).
The writ is discharged.