79 N.J. Super. 202 (1963)
191 A.2d 186
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DEMETRIOS MPETAS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 18, 1963.
Decided May 17, 1963.
*204 Before Judges FOLEY, PRICE and SULLIVAN.
Mr. Sidney M. Goodelman argued the cause for appellant.
Mr. Morgan E. Thomas, Assistant County Prosecutor argued the cause for respondent (Mr. Augustine A. Repetto, Atlantic County Prosecutor, attorney).
The opinion of the court was delivered by SULLIVAN, J.A.D.
Defendant Demetrios Mpetas appeals from a conviction of possession of marihuana. He charges that the evidence used to convict him (three marihuana cigarettes found in his car) was the product of an unlawful search. He also claims that there was insufficient evidence to support the finding of guilt and that the sentence imposed on him amounted to cruel and unusual punishment.
Defendant and one George Spilios were indicted jointly for violation of R.S. 24:18-4 (possession of a narcotic drug, to wit, marihuana) and were tried by jury. A dismissal was granted as to Spilios at the end of the State's case. Defendant, however, was found guilty, sentenced to three to five years in State Prison, and fined $250.
At the trial the State produced evidence substantially as follows. On June 27, 1960 a group of 17- and 18-year-old boys and girls was gathered in and around a "sub-shop" on South Carolina Avenue, Atlantic City. It was around midnight. Defendant and George Spilios parked a Jaguar automobile owned by defendant in front of the shop and soon a group of boys congregated around it. Defendant struck up a conversation with Mitchell Budman, an 18-year-old college student. After some talk as to whether or not it was possible to get a certain drug, defendant asked Budman "if there were any kids that were on dope and if there was a run for it down there." Defendant showed Budman some capsules and said *205 "he had in his possession marihuana and that he could get more if I could start selling it." Defendant and Budman agreed to meet the following night. After defendant and Spilios drove away Budman went to police headquarters, told what had happened and furnished the police with a description of the men and the license number of the car.
An alarm was sent out for the men, who shortly thereafter, about 1:20 A.M., were found driving on New York Avenue in Atlantic City. While under observation they stopped at the Fort Pitt night club, parked the car and went inside. The police officers who had been following the men radioed for assistance and after reinforcements arrived, went inside, found defendant and Spilios at the bar, and arrested and searched them. The search of Spilios revealed nothing incriminating. A small capsule was found in defendant's pocket. The two men were brought outside. Defendant had the keys to the car and said the car belonged to him. The keys were taken from him and the car was driven to police headquarters by one of the officers. Defendant and Spilios were also taken to headquarters, and while being questioned at police headquarters, at about 2 A.M., a search of the car was made and three marihuana cigarettes were found under the right front seat. A bottle of tablets, and capsules similar to the one found in defendant's possession, were also found in the glove compartment. The tablets were shown to be sleeping pills and the capsules a narcotic called Dolephene, obtained by defendant on the prescription of a doctor. It was undisputed that the police had not obtained a warrant for defendant's arrest or a search warrant.
Defendant admitted being at the "sub-shop" on the night in question but said that he did not have any discussion with Budman about drugs or marihuana. Defendant readily admitted possession of the tablets and capsules, but testified that he had suffered a slipped disc in his back and was constantly taking "pills" for the pain. He denied ownership of the marihuana cigarettes and professed ignorance as to how they happened to be in his car.
*206 We find there was sufficient evidence to support the verdict of guilt. The testimony of State's witness Budman, if believed, connected defendant beyond a reasonable doubt with the three marihuana cigarettes found in his car. Defendant's contention on this score has no merit.
Nor do we agree with defendant's argument that the sentence of three to five years in State Prison and a $250 fine amounted to cruel and unusual punishment. The crime of which defendant was convicted was a high misdemeanor. The sentence was well within the limits fixed by law, N.J.S.A. 24:18-47. Under the circumstances herein presented it was not manifestly excessive. Cf. State v. Johnson, 67 N.J. Super. 414 (App. Div. 1961).
Defendant's principal contention is that the search of his car by the police was unlawful and that the evidence obtained thereby (the marihuana cigarettes) should be suppressed. This contention was not made at trial. (The search antedated Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), and defendant's trial took place two days after Mapp was decided.) However, defendant's right on this appeal to argue under the plain error rule, as to the illegality of the search is clear. Indeed, the State so concedes. R.R. 1:5-1; 2:5; State v. Corby, 28 N.J. 106 (1958). Cf. State v. Smith, 37 N.J. 481 (1962); State v. Evans, 78 N.J. Super. 437 (App. Div. 1963).
The State justifies the search of defendant's car on the ground that it was incidental to, and for practical purposes contemporaneous with, the lawful arrest of defendant.
Preliminarily, we consider the legality of defendant's arrest. Admittedly, the police did not have a warrant for defendant's arrest, nor had defendant committed a crime in their presence. Therefore, the lawfulness of defendant's arrest turned on the issue of whether or not the police had probable cause to believe that defendant had committed a crime within the common law of arrest. State v. Smith, supra, at pp. 493-4.
*207 At common law a peace officer could arrest if he had probable cause to believe a felony was committed by the person he apprehended, even though the felony was not committed in his presence. Brown v. State, 62 N.J.L. 666, 695 (E. & A. 1899), affirmed 175 U.S. 172, 20 S.Ct. 77, 44 L.Ed. 119 (1899). The common law of arrest still holds in New Jersey, even though we no longer have felonies as such in this State. State v. Smith, 37 N.J. (supra), at pp. 493-4. We note that the offense here involved, namely, possession of a narcotic drug, was not a felony, and probably was not even a crime, at common law.
However, under present law, the right of a police officer to arrest for probable cause is not limited to the crimes which were common law felonies. State v. Smith, supra, at pp. 493-4.
At common law the fundamental distinction between a felony and a misdemeanor rested with the penalty and the power of imprisonment. 22 C.J.S., Criminal Law § 6, p. 17. A felony was considered to be a crime of a graver or more atrocious nature than those designated as misdemeanors. Black, Law Dictionary (4th ed. 1951). Under present law, the right of a police officer to arrest for probable cause includes the more serious crimes  those of a graver or more atrocious nature. Cf. State v. Smith, 32 N.J. 501, 531 (1960); State v. Woodworth, 121 N.J.L. 78, 82 (Sup. Ct. 1938).[1]
In the instant case the police had probable cause for belief that defendant had committed a crime, the gravity and seriousness of which is unquestioned. They had received information from Budman as to his conversation with defendant concerning defendant's possession of marihuana. Budman had furnished a description of the men and the license number of the car. This was not an anonymous tip nor did it *208 come from an "informer." It was volunteered by an 18-year-old college student who identified himself to the police.
Traffic in narcotic drugs is one of the great evils of our times. The Uniform Drug Law, R.S. 24:18-1 et seq., was enacted "as an all-out offensive to combat the drug evil." State v. Reed, 34 N.J. 554, 564 (1961). Under said act, unauthorized possession of marihuana is made a high misdemeanor. A first offender may be fined up to $2,000 and imprisoned at hard labor for a term not less than 2 nor more than 15 years. N.J.S.A. 24:18-47. The gravity and seriousness of the crime charged to defendant justified his arrest on probable cause. Cf. Application of Bogish, 69 N.J. Super. 146 (Law Div. 1961).
We next consider the legality of the search of defendant's car. After the police alarm went out, the car with defendant and Spilios in it was located proceeding on New York Avenue in Atlantic City. Had the police arrested the men then, they could have made an immediate search of the car without a warrant, since they had probable cause to believe that defendant was in possession of marihuana. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). While the men were under police observation, they stopped at the night club, parked the car and went inside. As soon as reinforcements arrived the police went inside, arrested the two men, and took them to police headquarters for questioning. Since the search of the men had not disclosed any marihuana, and since the police had information that defendant had marihuana in his possession, the logical place to look was in the car which defendant had with him both at the time he talked to Budman and at the time of his arrest. Cf. Rhodes v. United States, 224 F.2d 348 (5 Cir. 1955). Under these circumstances, the search of defendant's car made at police headquarters was incidental to defendant's lawful arrest, and for practical purposes contemporaneous with it. Bartlett v. United States, 232 F.2d 135 (5 Cir. 1956); Fraker v. United States, 294 F.2d 859 (9 Cir. 1961).
*209 We conclude that the evidence on which defendant's conviction was bottomed, the three marihuana cigarettes found in his car, was not the product of an unreasonable search and seizure.
Affirmed.
NOTES
[1] Legislative clarification of the law of arrest is badly needed. The common law rule is not readily adaptable to our statutory classification of crimes.