196 So.2d 8 (1967)
Thomas WALKER, Jr., Appellant,
v.
The STATE of Florida, Appellee.
No. 66-277.
District Court of Appeal of Florida. Third District.
February 28, 1967.
*9 Robert L. Koeppel, Public Defender, and Phillip A. Hubbart, Asst. Public Defender, for appellant.
Earl Faircloth, Atty. Gen., Barry N. Semet and Arden M. Siegendorf, Asst. Attys. Gen., for appellee.
Before PEARSON and SWANN, JJ., and WILLIAMS, GENE, Associate Judge.
PER CURIAM.
Defendant, Thomas Walker, Jr., appeals from a judgment of conviction and sentence for the crime of possession of marijuana. He claims reversible error was committed by the denial of his motion to suppress evidence (marijuana) found on his person subsequent to the arrest.
On December 6, 1965, at 4:30 P.M., Officer Nicholas Navarro of the Dade Sheriff's Office, received a telephone call. The caller identified himself as one Grisby and said that a man had been trying to sell, or give, him marijuana for him to sell; that this man had just left the bar from where the call was being made; that he was carrying a package of marijuana in his left rear pants pocket, and that he, Grisby, would point the man out to the police.
Officer Navarro and a federal agent, Klick, immediately proceeded to the bar where they met Grisby, who told them that the defendant had just left the bar and was walking north. Officer Navarro arranged with Grisby to catch up with the suspect and to give a pre-arranged signal when he could verify that the suspect still had the marijuana.
Navarro and Grisby then proceeded north on opposite sides of the street. As they arrived at the next intersection, the defendant walked across the street to talk to Grisby. They engaged in a brief conversation, during which Grisby raised his hand. Officer Navarro crossed the street, placed the defendant under arrest for violation of the Florida Narcotics Laws, and ordered him to surrender the contents of his left rear pocket. The defendant's pocket contained a quantity of marijuana which Officer Navarro seized.
The arrest and search of the defendant took place within approximately fifteen minutes after the initial telephone call from Grisby. Navarro testified that he had never spoken to Grisby prior to the telephone call, and that he had never met the defendant prior to the defendant's arrest. Grisby appeared at the trial and testified as to these events.
At the trial, the defendant made an oral motion to suppress the evidence seized from him on the ground that the search was incident to an unlawful arrest of the *10 defendant, since the arrest was based entirely on the uncorroborated hearsay accusation of Grisby, an informer who was unknown to the police. The trial court denied the motion to suppress and admitted into evidence, over objection, the marijuana seized from the defendant by the police. Defendant was convicted and now appeals.
The State argues that the real point involved on appeal is "whether probable cause to make an arrest without a warrant exists when an individual advises the police that a man has attempted to sell narcotics to him, that said man has narcotics in his possession and said individual, upon conversing with the man within minutes after notifying the police and under their observation, signifies to them that the man has narcotics in his possession."
As authority for reversal appellant relies upon Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). There, an arrest without a warrant was made solely on the basis of information given to an officer, two days prior to the actual arrest, by a person described as a "reliable paid informer." The search subsequent to the arrest revealed narcotics; the person giving the information died prior to the hearing on the defendant's motion to suppress the evidence, and the motion was denied. The Supreme Court held that the arrest without a warrant was legal, since the officer had probable cause to believe that the person to be arrested had committed a violation of the Narcotics Act, and that the agent could rely on hearsay evidence from a reliable informer.
Appellant suggests that the law therefore is that a police officer may make a lawful arrest based on hearsay from a reliable informant so long as the hearsay has been reasonably corroborated by independent facts within the arresting officer's knowledge, and that such was not the case here.
Section 901.15, Florida Statutes, F.S.A., provides that a peace officer may arrest without a warrant when he has reasonable ground to believe that a felony has been or is being committed and reasonable ground to believe that the person to be arrested has committed or is committing it.
Section 398.03, Florida Statutes, F.S.A., makes it unlawful for any person to have under his control, or to sell any narcotic drug with certain exceptions. A violation of any of the provisions of this law constitutes a felony under Section 398.22, Florida Statutes, F.S.A., and an attempted sale of narcotics is also a felony. Section 776.04(2), Florida Statutes, F.S.A.
When police officers receive a voluntary telephone call from a citizen who identifies himself but has no previous record as an informant, about an attempted sale of narcotics, they have not only a right but a duty to investigate the facts. When they go to a bar and meet and discuss the matter with the citizen who called, and when he recontacts the alleged culprit, talks with him, and by a prearranged signal advises the officers that the culprit still has narcotics on his person, they then have reasonable grounds to believe that a felony was being committed and that the person to be arrested was committing it.
It appears that from the short period of time involved (less than fifteen minutes) it would not have been feasible to have obtained an arrest warrant or the culprit might have escaped.
"In dealing with probable cause, * * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, at 175, 69 S.Ct. 1302, at 1310, 93 L.Ed. 1879, at 1890 (1949).
In State v. Mpetas, 79 N.J. Super. 202, 191 A.2d 186 (1963), the defendant and a co-defendant approached a group of 17 and 18 year old boys and girls at approximately *11 midnight. After parking his automobile, the defendant began conversing with one Budman, an 18 year old college student. The defendant asked Budman if any of the "kids" were on dope. He showed Budman some capsules, said that he had marijuana in his possession and that he could obtain more if he was able to start selling it. The defendant and Budman agreed to meet the following night and after the defendant and the co-defendant drove away, Budman went to the police. He informed the police of what had transpired and furnished them with a description of the defendant, the co-defendant, and the license number of their automobile. After an alarm went out the defendants were seen driving at 1:20 A.M. When they entered a night club, the police followed them and placed them under arrest. A subsequent search disclosed narcotics. As in the instant case, the arrest in Mpetas was without a warrant and the arresting officers did not observe the defendants commit a crime. On these facts, the New Jersey court stated:
* * * * * *
"In the instant case the police had probable cause for belief that defendant had committed a crime, the gravity and seriousness of which is unquestioned. They had received information from Budman as to his conversation with defendant concerning defendant's possession of marihuana (sic). Budman had furnished a description of the men and the license number of the car. This was not an anonymous tip nor did it come from an `informer'. It was volunteered by an 18-year-old college student who identified himself to the police."
* * * * * *
People v. Lewis, 240 Cal. App.2d 546, 49 Cal.Reptr. 579 (1966), contains pertinent language concerning the distinction between a citizen who reports a crime and a reliable informant:
* * * * * *
"In bookmaking and narcotics cases the courts have developed the concept of the `reliable informant,' which, in that context means a person who has previously given the police information which has been found to be true. By that standard a known criminal, a drug addict, or even an anonymous voice on the telephone may become a `reliable informant,' upon whose word the police may make warrantless arrests, break in doors and conduct searches. (See, e.g., People v. Prewitt, 52 Cal.2d 330, 341 P.2d 1.)
"But experienced stool pigeons are not the only sources of credible information, and the tests of reliability which must be applied to such persons are not necessarily applicable to every citizen who assists the police.
"Bookmaking and narcotics offenses are crimes which are usually committed in the presence only of the criminals themselves, where there is no innocent victim to complain. The persons most likely to furnish information are themselves criminally involved or disposed, and their reports to the police are generally motivated by something other than good citizenship. Such an informer rarely offers himself as a witness to crimes already committed. His usual function is to supply a tip in confidence whereby the police may witness a crime or uncover evidence of it for themselves. A citizen such as Mr. Owens, who reports a crime committed in his presence, is more than a mere informer. He is an observer of criminal activity who, by calling the police, acts openly in aid of law enforcement.
"Courts have not hesitated to find it reasonable for police officers to act upon the reports of such observers."
* * * * * *
Clearly, a person who voluntarily calls the police with information concerning a violation of the law; who identifies himself and waits for the police to arrive; who cooperates in the apprehension of the *12 suspect, and who testifies at the trial, cannot be characterized as an unknown, unreliable informant. He is, in our opinion, a citizen who has observed criminal activity and who is acting in the best interests of society.
We find that this arrest was based upon probable cause and that the subsequent search was valid.
The judgment of conviction and sentence is therefore
Affirmed.