72 N.J. Super. 511 (1962)
178 A.2d 383
THE STATE OF NEW JERSEY, PLAINTIFF,
v.
NICHOLAS MACRI AND JERRY RACANIELLO, DEFENDANTS.
Superior Court of New Jersey, Law Division  Criminal.
Decided February 19, 1962.
*512 Mr. Charles C. Carella, Assistant Prosecutor, for plaintiff (Mr. Brendan T. Byrne, County Prosecutor of Essex County, attorney).
Mr. Max Mehler, attorney for defendant Macri.
Mr. Saul C. Schutzman, attorney for defendant Racaniello.
CRANE, J.C.C. (temporarily assigned).
On December 21, 1960 defendants Macri and Racaniello were in an apartment on Scotland Road in Orange, New Jersey, belonging to one Thomas Schillizzi. Detectives from the Essex County Prosecutor's Office, armed with a search warrant, knocked on the door, announcing that they had a package for delivery. When defendant Macri told them to leave the *513 package in front of the door, the detectives forced entry and searched the apartment, finding rundown sheets and other paraphernalia pertaining to bookmaking.
Two indictments have been returned against the defendants: one charges bookmaking, in violation of N.J.S. 2A:112-3, the other a conspiracy to violate the bookmaking statute. Defendants have moved to suppress the evidence seized.
The ground upon which it is urged that the seized articles should be suppressed is the claim that the search warrant was void because it was issued upon the basis of an affidavit containing insufficient facts on which to base a finding of probable cause.
The affidavit upon the basis of which the search warrant was issued reads as follows:
 "STATE OF NEW JERSEY |
 > SS.
 COUNTY OF ESSEX |
Peter J. Kenny, a Lieutenant of Detectives attached to the Prosecutor's Office in the County of Essex, being duly sworn according to law upon his oath deposes and says that through information received from a law enforcement officer and investigation conducted by him, he has just and reasonable cause to suspect and believe and does suspect and believe that the following goods and property, to wit: slips, papers, records, memoranda, sheets and paraphernalia, used in connection with the crime of Bookmaking are concealed in the premises of Thomas Schillizzi known and designated as No. 191 Scotland Rd., in the City of Orange, Essex County, New Jersey; and that he further has just and reasonable cause to suspect and believe and does suspect and believe that the said property is being used in connection with a violation of law commonly known as Bookmaking contrary to the statute in such case made and provided.
He, therefore, prays that a warrant be issued and said premises be entered and searched.
Peter J. Kenny"
The Fourth Amendment of the United States Constitution and the New Jersey Constitution, Article 1, paragraph 7, provide, in substantially identical language, that search warrants shall issue only upon probable cause supported by oath or affirmation.
*514 It is conceded by the prosecutor that the Fourth Amendment has been interpreted by the federal courts as requiring the issuing magistrate to make a finding of probable cause. See Nathanson v. United States, 290 U.S. 41, 47, 54 S.Ct. 11, 78 L.Ed. 159 (1933); Baysden v. United States, 271 F.2d 325 (4 Cir. 1959). Nevertheless, it is argued that the courts of New Jersey are not bound to follow such cases and that the standard established under the New Jersey Constitution is different.
The principal case cited by the State is Application of Berlin, 19 N.J. 522 (1955). This case, however, is not authority for the proposition that a warrant may properly be issued upon the basis of an affidavit containing merely conclusory statements. Justice Wachenfeld pointed out, at page 526, that the affidavit recited all of the officer's personal observations over an extended period of time of the premises sought to be searched. The opinion specifically held that the facts submitted were sufficient and commented, at 19 N.J., at p. 527, that,
"If the facts submitted in the instant case were not sufficient cause for granting a search warrant, such warrants would become obsolete for failure of usage."
Clearly, in mentioning "facts submitted," the Supreme Court had reference to facts submitted in the affidavit, as contrasted with facts existing solely within the mind of the officer. The opinion of the County Court bears this out, In re 301-317 Clinton Avenue, 35 N.J. Super. 136 (Cty. Ct. 1955), wherein it was stated, at page 140, that
"The affidavit in the instant case clearly established circumstances from which it might reasonably be concluded upon the information and belief of the affiant that the lottery law was being violated in the premises in question." (Emphasis supplied)
Examination of the contents of the affidavit filed in the Berlin case indicates that it contained a detailed factual statement of the detective's investigation and observations.
*515
 "STATE OF NEW JERSEY, |
 > SS.:
 COUNTY OF ESSEX. |
William F. Beegle, being of full age and duly sworn according to law, upon his oath deposes and says:
I am a detective of the New Jersey State Police. I have been assigned to investigate matters pertaining to the conduct of an unlawful lottery business in Essex County, New Jersey and elsewhere in New Jersey.
In the course of my investigation I have observed premises known as 301-317 Clinton Avenue, City of Newark, almost daily from October 6, 1954 to the present time, and in particular rooms 1 and 2 situated on the second floor of that building. This building is a commercial building and used for business purposes. The tenant of rooms 1 and 2 is not listed on the building directory.
Almost every day, with the exception of Sundays, I observed a number of men in room 201. I was able to identify the men I saw and based on my investigation, and information and belief, many of them are connected with an unlawful lottery business being carried on in Essex County.
One of these is Harry Colston who is known as a collector or controller and from day to day I have seen him enter the building carrying paper bags and envelopes. I have followed Colston to various places in the City of Newark where lottery numbers are sold. Colston has no known legitimate occupation. Colston operates a 1954 Black Lincoln Capri which is in the name of his wife.
I have also seen other persons who are reputed to be connected with an unlawful lottery business in the aforesaid rooms. A person by the name of Irving Berlin has been seen by me in room 1 daily. He seems to be in charge. On a number of occasions I have seen him take a large stack of bills from his desk drawer and count it and hand it to persons whom I was not able to identify at the time. In the course of my investigation I found slips bearing lottery numbers which were torn in bits and which had apparently come from the aforementioned room. These lottery numbers were among papers that bore the name of Irving Berlin.
From my observations there appears to be no legitimate business carried on in the aforesaid rooms, or by the men who occupy them.
Based on my investigation, and on information and belief, the afore-mentioned persons are engaged in the business of conducting an unlawful lottery in Essex County, New Jersey. It is my belief that they are in possession of lottery slips and lottery paraphernalia, and that such paraphernalia will be found in rooms 1 and 2 of the aforesaid address.
William F. Beegle"
It has been held that "The issuance of a warrant is in itself a finding by the magistrate that there is probable cause for its issuance * * *" State v. Best, 8 N.J. Misc. *516 271, 276; 150 A. 44 (Q. Sess. 1930). In the exercise of such a function there must be presented to the magistrate sufficient facts (whether based upon personal observation or reliable hearsay) from which the magistrate may properly make a finding of probable cause. The issue, therefore, is not whether the officer executing the affidavit was in possession of sufficient information to constitute probable cause, but whether sufficient facts were communicated to the magistrate by the officer under oath or affirmation. This is a plain requirement of both the United States and the New Jersey constitutional provisions. That it may not in some instances have been rigidly observed can only be explained by the prevalent opinion in New Jersey prior to the Mapp decision, infra, that relevant evidence illegally seized was nevertheless admissible, Eleuteri v. Richman, 26 N.J. 506 (1958).
Although in the Berlin case Justice Wachenfeld mentions "a stricter federal rule," in so doing he was merely paraphrasing an argument made by the defendant which is rejected. The opinion does not suggest that the federal rule contesting the adequacy of a search warrant is any stricter than that observed in New Jersey, or that the New Jersey rule is any the less strict.
Testing the affidavit of the detective in this case by the above standards, it is seen to be deficient. It speaks in terms of the officer's cause to believe and suspect the presence of certain articles used in the violation of the law. It mentions information from another law enforcement officer, but does not state what that information is. It mentions investigation, but does not set forth what was observed during the course of the investigation. In short, the affidavit sets forth mere conclusions rather than facts upon which the issuing judge could find probable cause. The conclusions and beliefs of a law enforcement officer, however sincere they may be, cannot be a substitute for facts substantiating a finding of probable cause. Cf. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).
*517 The prosecutor's fear that a requirement of disclosure of the basis for reasonable cause will compel the revelation of confidential informants is unfounded. Recently the United States Supreme Court in Jones v. United States, supra, rejected a contention that an affidavit supporting a search warrant was insufficient for failure to disclose the names of informants. The court said 362 U.S., at p. 272, 80 S.Ct., at p. 736:
"* * * We have decided that, as hearsay alone does not render an affidavit insufficient, the Commissioner need not have required the informants or their affidavits to be produced, or that Didone have personally made inquiries about the apartment, so long as there was a substantial basis for crediting the hearsay."
Moreover, under a recently enacted statute, the officer making the affidavit has a privilege to refuse to disclose the identity of the informer unless ordered to do so by the court. N.J.S. 2A:84A-28.
Since the warrant in this case was not supported by adequate facts, it did not conform to the constitutional standards and must be regarded as a nullity.
The prosecutor has argued that even if such a conclusion should be reached by this court, nevertheless, the evidence seized should not be suppressed. His argument is based upon the concept that the suppression of evidence illegally seized is a sanction against law enforcement officials applied to deter unlawful searches and seizures, and that such a sanction is unneeded to obtain compliance from the judiciary.
Resolution of this issue requires an understanding of the full import of the decision in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 108 (1961). Prior to that decision, it had been held that the exclusionary rule obtaining in the federal courts was one (sometimes called a rule of evidence) which the courts of the several states were free to follow or not as the law of each jurisdiction allowed. Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, *518 93 L.Ed. 1782 (1949); Eleuteri v. Richman, supra. The state courts, however, are no longer free to apply the exclusionary rule or not, as principles of their own jurisprudence may dictate; they are required to apply the exclusionary rule as one which inheres in the United States Constitution and is applicable to the states through the Fourteenth Amendment.
The stated holding of the Mapp case is that
"* * * All evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court." (Emphasis supplied)
The rule of exclusion has finally been exalted to one of constitutional dignity. A majority of the justices of the Supreme Court (including Justice Black, who relies on the Fifth Amendment as well as the Fourth) view the exclusionary rule as one of constitutional command.
The only case decided by our New Jersey Supreme Court on the subject thus far, State v. Valentin, 36 N.J. 41 (1961), contains language opposed to the position taken by the prosecutor. At page 43, it was said, referring to the Mapp decision,
"The opinion declared that the interrelationship of the Fourth Amendment and the due process clause of the Fourteenth Amendment of the United States Constitution guaranteeing to individuals the right of privacy free from unreasonable state intrusion, renders evidence obtained by unreasonable search and seizure inadmissible in a state criminal prosecution based thereon. As the result of this new doctrine, obviously, if the shotgun involved here was secured through an unreasonable search and seizure, defendant's application to bar its introduction as evidence against him is sound and must be granted."
No authority is cited for the position taken by the State. In fact, the federal cases are to the contrary. In Nathanson v. United States, supra, the exclusionary sanction was applied to evidence seized pursuant to an illegally issued warrant, as it was more recently in Baysden v. United States, supra.
*519 Since the exclusionary rule is one of constitutional command as distinguished from an evidentiary rule, as decided by Mapp, supra, "it makes little difference whether a search was made without a warrant under circumstances where a warrant should have been procured, or made with a warrant procured on mere suspicion, as distinguished from facts from which probable cause can be found. In either case the search is an unreasonable one under the provisions of the Fourth Amendment and its fruits are "by that same authority inadmissible in a State court."
The conclusions herein expressed render it unnecessary to pass upon defendant's remaining points. The motions to quash the warrant and suppress the evidence seized are granted. An order in conformity herewith may be submitted.