74 N.J. Super. 243 (1962)
181 A.2d 48
THE STATE OF NEW JERSEY, PLAINTIFF,
v.
THOMAS HAYECK, DEFENDANT.
Superior Court of New Jersey, Union County Court, Law Division  Criminal.
Decided April 23, 1962.
*245 Mr. H. Douglas Stine, Union County Prosecutor, for plaintiff.
Mr. Joseph Higgins for defendant (Messrs. Pollis, Williams & Pappas, attorneys).
W.F. WOOD, J.C.C.
Defendant was arrested and later indicted for bookmaking activities on March 10, 1961 at his shoe store in the Township of Cranford.
He now moves, before trial of the indictment, for an order suppressing the evidence in the possession of the prosecutor on the ground that such evidence was obtained during a search which was made without a warrant and which was, therefore, unreasonable and illegal. He relies upon the now famous case of Mapp v. Ohio, 367 U.S. 643 (1961), which held that evidence obtained as the result of an unlawful search and seizure may not be admitted in the courts of any state. The prosecutor admits that no search warrant was obtained, but he resists suppression with the contentions that (1) the search was reasonable under the circumstances, and (2) the search was made with defendant's consent.
Although the instant investigation was made before the decision in the Mapp case, there can be no doubt that the principles of that case are applicable here. State v. Masi, 72 N.J. Super. 55 (Law Div. 1962). However, because of substantial differences in the facts, there are issues here raised which are not resolved by the Mapp decision. The facts of the latter case were recited therein by the court as follows:
"On May 23, 1957 three Cleveland police officers arrived at appellant's residence in that city pursuant to information that `a person [was] hiding out in the home who was wanted for questioning in connection with a recent bombing, and that there was a large amount of policy paraphernalia being hidden in the home.' *246 Miss Mapp and her daughter by a former marriage lived on the top floor of the two-family dwelling. Upon their arrival at that house, the officers knocked on the door and demanded entrance but appellant, after telephoning her attorney, refused to admit them without a search warrant. They advised their headquarters of the situation and undertook a surveillance of the house.
The officers again sought entrance some three hours later when four or more additional officers arrived on the scene. When Miss Mapp did not come to the door immediately, at least one of the several doors to the house was forcibly opened and the policemen gained admittance. Meanwhile Miss Mapp's attorney arrived, but the officers, having secured their own entry, and continuing in their defiance of the law, would permit him neither to see Miss Mapp nor to enter the house. It appears that Miss Mapp was halfway down the stairs from the upper floor to the front door when the officers, in this highhanded manner, broke into the hall. She demanded to see the search warrant. A paper, claimed to be a warrant, was held up by one of the officers. She grabbed the `warrant' and placed it in her bosom. A struggle ensued in which the officers recovered the piece of paper and as a result of which they handcuffed appellant because she has been `belligerant' in resisting their official rescue of the `warrant' from her person. Running roughshod over appellant, a policeman `grabbed' her, `twisted [her] hand,' and she `yelled [and] pleaded with him' because `it was hurting.' Appellant, in handcuffs, was then forcibly taken upstairs to her bedroom where the officers searched a dresser, a chest of drawers, a closet and some suitcases. They also looked into a photo album and through personal papers belonging to the appellant. The search spread to the rest of the second floor including the child's bedroom, the living room, the kitchen and a dinette. The basement of the building and a trunk found therein were also searched. The obscene materials for possession of which she was ultimately convicted were discovered in the course of that widespread search."
In the instant case the procedure followed by the investigating officers is quite different. Union County Detective Haines, who conducted the investigation with the assistance of County Detective Frankel and two members of the Cranford Police Department (Captain Rosendale and Officer Haney), testified that his office had received information of possible bookmaking at defendant's store and that he had checked the premises on two or three occasions during November and December 1960 without seeing any evidence of bookmaking or any circumstances that would *247 have been sufficient to procure a search warrant. However, on March 10, 1961, the date in question, while watching the store from a nearby point of vantage, Detective Haines and the other officers observed several people entering and leaving the store, within a period of about one and one quarter hours, without purchasing any merchandise. Among such people were two men (Anthony Malpire and a cab driver by the name of Scarizin), who were believed by the officers to be connected with gambling activities. After making these observations Detective Haines and Captain Rosendale entered the store through the front door while Detective Frankel and Officer Haney watched the rear door. In the premises were the defendant, Malpire and a third man by the name of Harry Walsh. Detective Haines identified himself to defendant, advised the latter of reports that bookmaking was going on in the store and asked him whether he had any objections to the officers' making a check of the premises. Defendant replied: "Go ahead; there is no gambling going on here." Detective Haines then asked defendant to empty his pockets and the latter complied in part with the request but failed to remove a slip of paper from his shirt pocket. Seeing the slip and noticing that it contained some printed and written matter, Haines removed the slip himself. It contained numerous horse race bets. Defendant admitted ownership thereof.
At this point Frankel and Haney entered the store, and the four officers then made a thorough search of the premises. They found therein horse race betting slips, Irish Sweepstakes tickets and a 2' x 3' board containing race winners for the preceding week. Some of this gambling evidence was found in the cash register and in a counter drawer, which were opened by defendant at Haines' request. The above board was "out in the open" in the rear room.
Detective Haines testified further that at about 9:30 A.M. on the date in question, before leaving his office, he had contacted the Cranford Police Department by telephone and informed them that he was coming down that morning to *248 work on the investigation of defendant's premises and that, as a result of that telephone call, Captain Rosendale and Officer Haney met him on the street at about 10:15 or 10:20 A.M. Thus, the date and time of making the investigation were fixed by Detective Haines. The evidence indicates that the method or procedure followed in the investigation was likewise determined by him. He was clearly the man in charge. The significance of the latter finding will hereinafter appear.
Defendant gave a different version of Detective Haines' activities upon entering the store. Defendant claimed that Haines merely showed his badge and then grabbed defendant's shirt and took the betting slip therefrom; that when defendant protested and asked what was going on, the detective told him to "do what you are told and you won't get into trouble"; and that the detective then pushed him a distance of about ten feet and forced him to empty his pockets and to open the cash register. However, defendant's testimony was wholly unconvincing. I believe the testimony of Detective Haines in every respect.
Not all searches made without a warrant are prohibited  only those which are unreasonable. Of significance here is the fact that, for example, a search may be made without a warrant if the searching officer has probable cause to believe the defendant or suspect possesses evidence of the commission of a crime and there is insufficient time to secure a warrant. State v. Chance, 71 N.J. Super. 77 (Cty. Ct. 1961); State v. Cardinale, 73 N.J. Super. 168 (Cty. Ct. 1962). Compare State v. Masi, supra, Hence, we must look at the circumstances here present to determine whether the search was reasonable.
The prosecutor's men had checked the premises on previous occasions without finding any circumstances that would have justified issuance of a search warrant. Evidence seized pursuant to a warrant issued without sufficient justifying facts, established by affidavit, is as suppressible as evidence seized during an unreasonable search without any *249 warrant at all. State v. Macri, 72 N.J. Super. 511 (Law Div. 1962). It follows that, on the basis of the information known to him, Detective Haines could not have obtained a proper search warrant prior to beginning the investigation of March 10, 1961. When, during the course of that investigation, he observed circumstances which would have supported a search warrant, it was clearly necessary or advisable to move quickly. Had the officers taken time out to obtain a warrant, the evidence might have been removed during the interval. I conclude that, except for the question discussed in the next paragraph, the search was reasonable.
The question mentioned in the preceding paragraph arises from the following circumstances: Captain Rosendale and Officer Haney of the Cranford Police Department were called as witnesses for defendant. Both admitted that on occasions prior to March 10, 1961, while in the vicinity, they had seen persons, including Anthony Malpire, enter and leave the defendant's store without buying anything and that this activity had caused them to suspect bookmaking. Assuming (without deciding) that the Cranford police, before starting the final investigation, had sufficient information to support a search warrant, question arises as to whether their knowledge or information was chargeable to the prosecutor. I think not. The prosecutor's office is an independent law enforcement agency, wholly unconnected with any municipal police department. It is independently charged with the duty of ferreting out crime. Indeed, the prosecutor is the principal law enforcement officer for the county. It would be manifestly unreasonable to suppress evidence in his possession, obtained by his men under circumstances which would otherwise render the absence of a search warrant excusable, solely because cooperating police officers had sufficient information for a search warrant. In this case, as already indicated, the investigation was primarily a project of the prosecutor's office, not of the police department. The reasonableness *250 of the prosecutor's actions must be tested on the basis of circumstances known to him or his agents. Under such circumstances, this was clearly an emergent situation. State v. Cardinale, supra.
Even if we conclude that, under the circumstances here present, a search warrant should have been obtained, the validity of the seizure may be sustained on another ground. Defendant's premises were not a private home, as in the Mapp, Masi and Macri cases, but a business establishment to which the public was invited. Law enforcement officers do not need a warrant in order to enter such an establishment. Their rights of entry certainly should not be any more restricted than those of the public generally. State v. Cardinale, supra. The search made after the officers entered was with defendant's consent. Although denied by defendant, I have found as a fact that defendant did say to Detective Haines, in response to the latter's request for permission to make a search, "Go ahead; there is no gambling going on here." That statement amounted to an express consent. Consent searches are a well recognized exception to the rule requiring search warrants. See State v. Borrell, 18 N.J. 16, 23 (1955). By such consent defendant waived any right he might have had to a search warrant.
Finally, no warrant or consent was required for the seizure of the slip from defendant's shirt pocket since that item was in plain view of the detective. In re Bogish, 69 N.J. Super. 146, 153 (Law Div. 1961). Cf. State v. Cardinale, supra, which involved (among other things) seizure of horse race slips dropped to the floor by defendant in the officer's presence.
The motion to suppress is denied.