74 N.J. Super. 420 (1962)
181 A.2d 420
STATE OF NEW JERSEY, PLAINTIFF,
v.
JOSEPH A. RACANELLI, DEFENDANT.
Superior Court of New Jersey, Essex County Court, Law Division.
Decided May 11, 1962.
*421 Mr. Maurice McKeown, Assistant Prosecutor, for plaintiff (Mr. Brendan T. Byrne, County Prosecutor of Essex County, attorney).
Mr. Thomas E. Weinstock for defendant (Messrs. Bendit & Weinstock, attorneys).
MATTHEWS, J.C.C.
This proceeding involves the application of Joseph A. Racanelli to suppress evidence obtained by members of the Newark police as the result of a search of his premises on October 13, 1961 pursuant to a warrant. The present application also requests that the warrant under the terms of which the search in question was conducted be *422 quashed. As a result of the seizure of the evidence here sought to be suppressed, defendant was indicted for violation of N.J.S. 2A:112-3 in two counts.
The testimony adduced at the hearing indicated that on October 13, 1961 three detectives and a policewoman, all members of the Newark police, bearing a search warrant, forced their way into the apartment of Racanelli and thereupon seized a quantity of paper writing relating to bookmaking. As a result of this, defendant was arrested and charged as aforementioned.
The main thrust of defendant's argument goes to the sufficiency of the facts disclosed to the magistrate issuing the search warrant upon which he determined that probable cause existed for the issuance of the warrant. It is claimed that nothing more than mere conclusion of the police officer seeking the warrant was offered to the magistrate, and that such cannot constitute probable cause within the constitutional meaning of that term for the issuance of a search warrant.
Based on the testimony taken at the hearing on the motions to suppress and quash, the following are the facts surrounding the issuance of the warrant: As a result of an informant's tip, police officers of the City of Newark, including Detective Robert J. Murphy, investigated a possible violation of the bookmaking laws allegedly being committed at 181 Eastern Parkway in the city. The investigation consisted in a surveillance of the premises on two occasions, at which times it was observed that suspect's motor vehicle was at home. In addition, on several occasions members of the gambling squad made telephone calls to the premises; each time a call was made, the telephone would ring one time and a man would answer. Detective Murphy, after determining on the basis of his experience with the gambling squad that the person answering the telephone was a bookmaker, prepared an affidavit as the basis for a search warrant reading as follows:

*423 "AFFIDAVIT
 STATE OF NEW JERSEY:
 SS
 COUNTY OF ESSEX :
Detective Robert J. Murphy Member of Newark Police Dept. Investigation Division, being duly sworn according to law upon his oath deposes and says that through information received from prior arrests, coupled with subsequent investigation and observation on 10/10/61 and 10/13/61, he has just and reasonable cause to suspect and believe and does suspect and believe that the following goods and property, to wit: Slips, papers, records, memoranda, sheets and paraphernalia, used in connection with the crime of Bookmaking 2A:112-3 and Lottery 2A:121-3 are concealed in the premises of A.J. Racanelli known and designated as No. 181 Eastern Parkway 1st fl. left in the City of Newark, Essex County, New Jersey; and that he further has just and reasonable cause to suspect and believe and does suspect and believe that the said property is being used in connection with a violation of law commonly know as Bookmaking 2A:112-3 and Lottery 2A:121-3 contrary to the statute in such case made and provided.
He, therefore, prays that a warrant be issued and said premises be entered and searched.
 sgd./ Robert J. Murphy
 Sworn to and subscribed
 before me this 13th day
 of October, 1961
 George P. Hemmer
 Notary Public of N.J.
 ______________________________
 MAGISTRATE, MUNICIPAL COURTS,
 COUNTY OF ESSEX, NEW JERSEY"
Upon completion of the affidavit, Mr. Murphy swore as to the truth of its contents before a lieutenant of the Newark Police Department who is also a notary public. He thereupon took the affidavit before a magistrate of the City of Newark, who was then sitting in municipal court. He approached the magistrate at side bar, presented the affidavit to him, and in doing so explained to the magistrate that he had received information from a previously reliable source that violations of the gambling laws were taking place on the premises; that on two occasions he had sat in front of the suspect's house and had observed that his motor vehicle was there; and that a number of telephone calls had been made to the telephone number listed for the *424 premises, resulting each time in the telephone's being answered by a male voice after one ring. At no time was the detective sworn before the magistrate. Based on the information just indicated, the magistrate signed and issued a search warrant directing and permitting a search of the premises of "A.J. Racanelli known and designated as No. 181 Eastern Parkway 1st fl. left in the City of Newark, Essex County, New Jersey."
Both the Fourth Amendment of the Constitution of the United States and paragraph 7 of Article I of the New Jersey Constitution of 1947 provide, in guaranteeing the right of the people to be secure against unreasonable searches and seizures, that no search warrant shall issue except upon probable cause, supported by oath or affirmation.
It is elementary, accordingly, that a search warrant cannot be regarded as being constitutionally valid unless it has been issued on such supporting facts, related to the issuing authority under oath or affirmation, as will give rise to probable cause for its issuance.
The intervening determination made by a dispassionate judicial mind is regarded as being one of the basic protections of the people against authoritarian harassment. In commenting upon this requirement of the Federal Constitution, Professor John Kaplan in an article entitled "Search and Seizure: A No-Man's Land in the Criminal Law," 49 Calif. L. Rev. 474, 479 (August 1961), states:
"The third requirement  that the probable cause must be determined by a magistrate or a United States Commissioner before the search is undertaken  is basic to the entire concept of the search warrant. The policy determination made in the fourth amendment demands that, except in certain very restricted circumstances, the police officers engaged in the `relatively competitive enterprise of ferreting out crimes' cannot themselves be the judge of when there exists probable cause to believe that a legitimate object of a search may be found. No matter how obviously a search may be in order, they must, in general, present their evidence of probable cause to a dispassionate magistrate who himself must then make that determination, and specify the area and objects of the search. A necessary corollary of this rule is that the doctrine of harmless error cannot *425 apply. The entire purpose of the fourth amendment would be frustrated if officers could defend a search without warrant on the ground that since a search warrant clearly could have been procured the defendant had not been prejudiced by the failure to present evidence to the magistrate."
The requirements found in both the Fourth Amendment of the United States Constitution and the 7th paragraph of the First Article of the New Jersey Constitution arose because of events which transpired in our history that are well known. One need only recall the practice in colonial days when the Crown issued writs of assistance and general search warrants under which the settlers in the new world were subjected to oppressive disturbances by government officials under the guise of efficient administration of the law. In Henry v. United States, 361 U.S. 98, 100 (1959), the Supreme Court recently reviewed and commented upon the historical background of the Fourth Amendment. In the course of its discussion, the court stated:
"The requirement of probable cause has roots that are deep in our history. The general warrant, in which the name of the person to be arrested was left blank, and the writs of assistance, against which James Otis inveighed, both perpetuated the oppressive practice of allowing the police to arrest and search on suspicion. Police control took the place of judicial control, since no showing of `probable cause' before a magistrate was required. * * *
* * * And as the early American decisions both before and immediately after its adoption show, common rumor or report, suspicion, or even `strong reason to suspect' was not adequate to support a warrant for arrest. And that principle has survived to this day."
In United States v. Lefkowitz, 285 U.S. 452, 464 (1932), Justice Butler in his opinion for the court emphasized the wisdom of placing the responsibility for issuing search warrants into judicial hands with the following language:
"The authority of officers to search one's house or place of business contemporaneously with his lawful arrest therein upon a valid warrant of arrest certainly is not greater than that conferred by a search warrant issued upon adequate proof and sufficiently describing *426 the premises and the things sought to be obtained. Indeed, the informed and deliberate determinations of magistrates empowered to issue warrants as to what searches and seizures are permissible under the Constitution are to be preferred over the hurried action of officers and others who may happen to make arrests. Security against unlawful searches is more likely to be attained by resort to search warrants than by reliance upon the caution and sagacity of petty officers while acting under the excitement that attends the capture of persons accused of crime."
Similar statements as to the requirement of the intervention of the independent judicial mind may be found in Go-Bart Importing Co. v. United States, 282 U.S. 344, 357 (1931); McDonald v. United States, 335 U.S. 451 (1948); Jones v. United States, 362 U.S. 257 (1960), and numerous intervening decisions.
In Dumbra v. United States, 268 U.S. 435, 441 (1925), it was held that for a search warrant to be valid, the one seeking the issuance of the warrant must have reasonable grounds to believe that a violation of the law is occurring on the premises to be searched, and that the facts set out in the affidavit in support of the request for the warrant must be such that a reasonably discreet and prudent man would be led to believe that the offense charged has been or was being committed. In Dumbra the court determined that probable cause did exist for the issuance of the warrant there sought to be quashed. In reaching this conclusion the court stated:
"In determining what is probable cause, we are not called upon to determine whether the offense charged has in fact been committed. We are concerned only with the question whether the affiant had reasonable grounds at the time of his affidavit and the issuance of the warrant for the belief that the law was being violated on the premises to be searched, and if the apparent facts set out in the affidavit are such that a reasonably discreet and prudent man would be led to believe that there was a commission of the offense charged, there is probable cause justifying the issuance of a warrant.
The apparent readiness of members of the family of a person in control of the suspected premises to sell intoxicating liquors to casual purchasers without any inquiry as to their right to purchase, and the actual production of the liquor sold, in one instance from *427 the premises suspected and in the other from the vicinity of those premises, under such circumstances as to lead to the inference that the suspected premises were the source of supply, gave rise to a reasonable belief that the liquors possessed on the suspected premises were possessed for the purpose and with the intent of selling them unlawfully to casual purchasers. Absence of a well-grounded belief that such was the fact could be ascribed only to a lock of intelligence or a singular lack of practical experience on the part of the officer."
Compare the holding in Dumbra, supra, with the determinations of the courts in Nathanson v. United States, 290 U.S. 41 (1933), and Baysden v. United States, 271 F.2d 325 (4 Cir. 1959). In Nathanson the affidavit of the revenue agent stated "that he has cause to suspect and to believe" that certain liquors unlawfully imported into the United States were now contained on Nathanson's premises. The Supreme Court observed that such language amounted to nothing more than a mere affirmance of a suspicion or belief that was without disclosure or indication of supporting facts or circumstances. The court concluded that under the Fourth Amendment a warrant may not properly issue to search a private dwelling unless the magistrate can find probable cause therefor from facts or circumstances presented to him under oath or affirmation.
In Baysden the Secret Service officers who filed the affidavits in support of the search warrant issued completely neglected to disclose to the issuing officer the information in their possession with respect to certain counterfeit money which was located in a refrigerator in a furniture store. Moreover, the agents failed to disclose the source or method from, or by which, their information was obtained. In holding that the affidavits were insufficient the court granted defendant's motion to suppress, notwithstanding the strong evidence in support of his guilt. The court observed that it did not doubt that the federal agents had ample grounds for their belief that the defendant was in possession of contraband, nor did it doubt that any judicial officer who had the authority to issue a warrant to search defendant's *428 place of business would have been justified in issuing a warrant had the agents disclosed the information they possessed and the source from which it was obtained. As the court observed, unfortunately this requirement was not met. While it may seem to some properly interested in the enforcement of the law that such a result represents a setback for the police, the answer to such an argument may be found in the words of the opinion of the court which state (271 F.2d, at p. 328):
"If the magistrate may accept the belief of the officer as sufficient, without inquiry as to its basis, controlling significance is attached to the officer's belief rather than to the magistrate's judicial determination."
The Supreme Court decisions hereinbefore referred to make it clear that the determination made by a judicial mind as to the existence of probable cause for the issuance of a search warrant is essential to the guarantees given to the individual citizen under the Fourth Amendment of the Constitution. The application of the principles of the Fourth Amendment to the several states cannot be disputed. See Mapp v. Ohio, 367 U.S. 643 (1961). In federal constitutional matters the decisions of the Supreme Court of the United States should be controlling and serve as guides to the judges of the state courts. With this view the Supreme Court of New Jersey is in complete accord. See for example, Schlemm v. Schlemm, 31 N.J. 557, 571 (1961), wherein Justice Jacobs stated:
"The strength of our democracy rests largely upon the constitutional guarantees which the courts enforce and the greatness of our nation is measured largely by the readiness of its people to accept and observe constitutional interpretations and applications by the designated final arbiter, the United States Supreme Court. We, as state judges, would indeed disserve the interests of our country if, because of conflicting local policies, we in any wise sought to disregard or evade the decisions of the Supreme Court as to the meaning and effect of the Federal Constitution."
Cf., Mazza v. Cavicchia, 15 N.J. 498, 516 (1954).
*429 Our own jurisprudence is not, however, totally deficient in judical determinations as to the requisites for the existence of probable cause. While it is true that the New Jersey courts have not, until recently, been faced with problems dealing with the issuance of search warrants to any great degree, nevertheless, our courts have, to a great degree, settled the law in this area.
In Application of Berlin, 19 N.J. 522, 527 (1955), the Supreme Court quoted with approval the definition of probable cause stated by Justice Trenchard in Lane v. Pennsylvania R.R. Co., 78 N.J.L. 672, 674 (E. & A. 1910):
"In cases of criminal prosecutions, `probable cause' means reasonable grounds for suspicion, supported by circumstances sufficiently strong in themselves to warrant an ordinarily cautious man in the belief that the accused is guilty of the offense with which he is charged."
Berlin involved a proceeding to quash a search warrant for want of probable cause for its issuance. It was determined there that under the facts the issuance of the warrant in question was justified. Cf. State v. Macri, 72 N.J. Super. 511 (Cty. Ct. 1962).
The definition quoted in Berlin is taken from the Lane case, as I have indicated. Lane involved a civil action wherein plaintiff sought damages for the alleged improvident issuance of a search warrant to search his premises for stolen goods. Thus, the issue before the court necessarily involved the existence of probable cause in the mind of the seeker of the warrant, insofar as that question went to the defense in the civil action. The Lane case in turn borrows from an opinion of Chief Justice Beasley in Spencer v. Anness, 32 N.J.L. 100 (Sup. Ct. 1866). The Spencer case was cited in Berlin by our present Supreme Court as supporting the definition of probable cause quoted therein. Spencer v. Anness, in turn, was a civil action which arose as the result of the alleged false imprisonment of the wife of the plaintiff. Thus, again, the issue of probable cause *430 went to the question of justification as a defense. In ruling that no probable cause was shown under the pleadings filed, Chief Justice Beasley in his opinion clearly and concisely indicated, by reference to the facts involved, the requisites for the existence of probable cause:
"The imprisonment of the wife of the plaintiff was legal, and consequently not actionable, if circumstances existed sufficiently suspicious to induce a discreet person to believe that she was guilty of the felony which had been committed. But these facts, constituting what in the books is called `probable cause,' must be set out in the plea. Mure v. Kaye et al., 4 Taunt. 34. In the plea now in hand, the facts stated are, simply, that the plaintiff's wife was near the wife of the defendant at the time the larceny was discovered, and that certain bystanders, one of whom was a police officer, asserted that there were grounds of suspicion. It will be observed, therefore, that the only circumstances relied on are the declarations of opinion by third persons, and the proximity of the party accused to the place of the discovery of the theft. Such facts do not constitute probable cause, for no prudent man, on such a groundwork, would impute crime to another. The accident of the presence of the plaintiff's wife at the time the money was missed, if unattended with words or conduct of a suspicious cast, was not on incident from which it was justifiable to draw any unfavorable inference, and beyond this the defendant had no ground for his conduct, so far as the facts of the transaction were concerned; for in an affair of this kind, his own suspicions, or those of others, unwarranted by the occurrence in any of its parts, must count as nothing. If the defendant had been informed by eye-witnesses to the scene, that they saw the wife of the plaintiff take the money, or do any act of a strongly suspicious nature, an entirely different case would have been presented. But the facts disclosed in this plea did not, in a legal view, warrant the arrest and imprisonment of the wife of the plaintiff."
Considering these principles and standards as set forth in the federal and state decisions referred to, the conclusion is inescapable that the affidavit submitted to the magistrate in support of the warrant here sought to be quashed was totally deficient. The affidavit contains nothing more than the mere conclusions of suspicion of the officer, without the slightest indication of the information on which they were based. The magistrate received information, under oath, that the defendant had been arrested previously and that he *431 had been observed and investigated on two occasions since those previous arrests. Such information disclosed nothing of value to the issuing magistrate, in that it was totally devoid of any factual presentation upon which a determination of probable cause would have been made. While it may well be that the officer seeking the warrant communicated a factual account of the investigation made by him and his fellow officers as to the defendant's activity, such communication must be completely disregarded when viewing the validity of the warrant, since by admission it was not communicated to the magistrate under oath; such a deficiency flies directly in the face of the constitutional requirements found both in the Federal and State Constitutions.
It is argued that the activities of the officers, while perhaps technically deficient were nevertheless made in good faith, and that this fact serves to refute any argument that can be made that there was a deliberate transgression of the constitutional requirements in procuring the warrant. Reference is made to the opinion of the Supreme Court of New Jersey in Eleuteri v. Richman, 26 N.J. 506, 509, 514 (1958), wherein it was stated:
"In sum total, for the purpose of this appeal, illegality is clear, but equally clear is the fact that the trooper in good faith attempted to comply with the applicable mandate of the Constitutions, Federal and State, that a magistrate's decision intervene between the police and the search.

* * * * * * * *
* * * An illegal search and seizure, on the other hand, does not inevitably import conscious illegality. On the contrary, there may be no purpose to flout the Constitution, but only a failure in good faith to stay within the complex rules relating to search and seizure. It is one thing to condemn the product of an arrogant defiance of the Constitution; it is another to impose the sanction when the official intends to respect his oath of office but is found to be mistaken, let us stay, by the margin of a single vote." (Emphasis added)
First it should be observed that Eleuteri did not involve the question of the existence of probable cause for the issuance of a search warrant. The illegality of the warrant therein *432 conceded to exist arose because of the admitted lack of jurisdiction of the magistrate issuing it. In addition, the decision in Eleuteri was handed down prior to the decision of the Supreme Court of the United States in Mapp v. Ohio, supra, and it was principally concerned with the continuance of the non-exclusionary rule of evidence, as to the fruits of the illegal searches and seizures, later abolished by the Mapp decision. The issue giving rise to the presence or lack of good faith on the part of the officer making the search in Eleuteri arose in connection with the argument of the applicant which sought to convince the court that New Jersey should adopt the exclusionary rule as to illegally obtained evidence. The language in the opinion answers the contentions advanced in that regard.
I cannot accept the argument, however, that this language of the Supreme Court indicates that a good faith test is germane in considering whether the constitutional mandates have been complied with when a search warrant is challenged on the ground that it was issued without probable cause. The decisions of the Supreme Court of the United States make it abundantly clear that the existence of probable cause, as determined by the issuing officer, is a sine qua non for the validity of the warrant to be sustained. In this country, with its traditions of liberty and equality, courts should be able to presume that the police and law enforcement officials act in good faith when carrying out their duties. While courts must be ever vigilant to insure that no oppressive practices of a malicious nature are carried on by those charged with the enforcement of the law, a presumption should exist that these officials carry out their functions with due regard for the rights of the individual. I therefore reject the argument that the question of good faith on the part of the officers should be regarded by the courts in determining whether probable cause exists, unless, of course, it is contended that false statements have been made on the part of one seeking a warrant. The test of good faith is most often associated in the law with the field *433 of commercial law where it has been described rather cynically as the test of the white heart and the empty head. In dealing with constitutional guarantees of rights and liberty of the people, concepts appropriate to the morals of the market place should not be regarded as pertinent standards.
There is no evidence to indicate, or from which the remotest inference may be drawn, that the officers here involved acted in other than good faith. Such an observation, however, as I have indicated, I deem to be irrelevant to the issue before me. The deficiency in the conduct of the officers here involved was their failure to communicate under oath to the magistrate the factual basis upon which their conclusions of suspicion rested. Since no matters were presented to the magistrate under oath from which he could determine that probable cause existed, his conclusion to issue the warrant on the basis of the matters presented to him must be regarded as being erroneous.
Defendant's motion to quash the warrant and to suppress the articles seized during the search conducted pursuant thereto is granted.